## Slegel *v.* Lauer, et al., Appellants.

*Easement—Base or qualified fee—Reversion—Possibility of reverter.*

An easement is a liberty, privilege or advantage which one may have in the lands of another without profit. It cannot be an estate or interest in the land itself, or a right to any part of it.

A base or qualified fee is a fee of which the duration depends upon the concurrence of collateral circumstances which qualify and debase the purity of the grant. The qualification must be found in the instrument itself, but no special or technical words are required to establish it.

Where an estate is conveyed in fee for a specified purpose, " and no other," the fee is a base fee determinable upon the cessation of the use of the property for that purpose.

Upon the determination of a base fee the property reverts to the grantor, without any claim or act on his part, where it is determinable by limitation. In the meanwhile the estate is out of him, and all that remains to him is the mere possibility of reverter. This possibility is capable of transmission to his grantees, and will pass to them under a conveyance of the reversion.

*Counties—County commissioners—Power to hold real estate—Act of April 15, 1834, sections 3 and 9.*

By section 3 of the act of April 15, 1834, P. L. 537, the several counties in this commonwealth are empowered as bodies corporate to sue and be sued by the corporate name, and by section 9 of the same act the titles to all the court houses, jails, etc., theretofore vested in the county commissioners, are declared to be vested in the respective counties.

Prior to the passage of the above act, the commissioners and their successors in office were regarded as corporations. As such they had power to accept a grant of land for such purposes as were lawful, having no power to hold land for other than a lawful purpose. In case land were taken, and the purpose ceased, the right to hold the land would determine.

*Equity jurisdiction—Bills quia timet—Courts of equity in Pennsylvania.*

A particular form of equity jurisdiction which is exercised to remove clouds upon title, complainant filing a bill quia timet, is an independent source or head of jurisdiction in the courts of this state, not requiring any accompaniment of fraud, accident, mistake, trust or account, or any other basis of equitable intervention.

In the exercise of this jurisdiction the court will, if necessary, declare the construction of a deed, will, or other instrument, though it seems that such construction, when not incidental to some recognized ground of chancery jurisdiction, has not been conferred upon courts of equity in this commonwealth.

An owner of property has a right, not merely to possession, but to a clear title, and when his right to the latter is incapable of being enforced in any legal action he can institute, he is entitled to the protection of a court of equity.

*Base fee—Grant of land to remain unbuilt on—Grantor reserving the use.*

In 1772 plaintiff's predecessor in title granted a strip of land eight feet in width to the commissioners of Berks county, adjoining the county jail, reserving the use of the same for an open yard, garden, or grass lot, for the purpose that the same should " be and remain forever hereafter unbuilt on, in order to prevent any prisoner or prisoners making their escape over the said prison wall, by reason or means of any building to be erected contiguous to the said wall." In 1848 the commissioners, by act of assembly, were authorized to sell the jail property, a new jail having been erected in another place, and they did so sell it to defendant's predecessors in title. Plaintiff filed a bill praying for the cancellation of the deed of 1772, alleging that " she was anxious to sell the property, but was unable to secure an adequate price for the same for the reason that defendants alleged that they had succeeded to the rights of the county commissioners under the deed of 1772 and would assert the same,"

*Held,* that the estate in the county under the deed of 1772, was a base fee which determined upon the sale of the jail property, and that plaintiff was entitled to a cancellation of the instrument of 1772.

Argued Feb. 29, 1892. Appeal, No. 355, Jan. T., 1891, by Rebecca Lauer, defendant, from decree of C. P. Berks Co.,

equity docket 1890, No. 507, in favor of Sue J. Slegel, executrix of Joel E. Slegel, deceased, plaintiff.   Before PAXSON, C. J., STERRETT, GREEN, MCCOLLUM and MITCHELL, JJ.

Bill in equity for cancellation of deed constituting a cloud on plaintiff's title.

The facts appear by the opinion of the court below, ENDLICH, J., which was as follows:

" Plaintiff is in possession of a strip of land, eight feet wide and 230 feet deep, in the city of Reading, adjoining on the south property of the estate of William Rhoads, Sr., deceased, which formerly belonged to the county of Berks, and was the site of the ' Old County Jail.'

" On December 1, 1772, plaintiff's predecessor in title, George Fleisher, with Margaret his wife, in consideration of the payment to them of seventeen pounds, lawful money of Pennsylvania, by indenture duly executed and acknowledged, and recorded in the recorder's office in Deed Book B, vol. 2, p. 71, ' granted, bargained, sold, released and confirmed unto Henry Reuthmeyer, David Brecht and Abraham Lincoln, commissioners of Berks county, and to their and each and every of their successors in the said office of commissioners, a certain piece or part of the said above mentioned and described lot, situate on the south side thereof, adjoining the prison lot and wall, containing in front on Callowhill street aforesaid, north and south, eight feet, and in length or depth, east and west, two hundred and thirty feet, to a twenty feet alley, together with the appurtenances (excepting and hereby reserving unto the said George Fleisher, his heirs and assigns forever hereafter, the free liberty and use of the said hereby granted premises and every part thereof for an open yard, garden or grass lot, with the rents, issues and profits of the same and every part thereof, provided always, that the said George Fleisher, his heirs, executors, administrators or assigns, keep no other gates or fences about the same except pale gates and fences two inches and an half apart and not to exceed four feet and an half in height).   To have and to hold the said piece or portion of ground hereby granted or mentioned or intended so to be with the appurtenances (except before excepted) unto the said Henry Reuthmeyer, David Bright and Abraham Lincoln, com-

missioners as aforesaid and their successors in the said office.
To and for the use, intent and purposes following, that is to say,
to be and remain forever hereafter unbuilt on in order to pre-
vent any prisoner or prisoners making their escape over the
said prison wall by reason or means of any building to be erect-
ed contiguous to the same wall.'

" By section 14 of the act of April 8, 1848, P. L. 399, 406–7,
the commissioners of Berks county were ' authorized, as soon
after the removal of the prisoners then in jail from the said old
jail to the (newly erected) Berks county prison, as to them
shall appear expedient, to sell the old jail property in the city
of Reading, consisting of the old jail buildings and the appur-
tenances, and a lot of ground, being on the corner of North
Fifth and Washington streets, in the said city of Reading, and
having sixty feet on said North Fifth street, and 230 feet on
Washington street, and to assure and convey to the purchaser
or purchasers the said property, by good and sufficient deed or
deeds.'

" Under this statute the commissioners sold and conveyed
the old jail property with the appurtenances to William Rhoads,
Sr., the deed being dated April 2, 1849, and recorded in Deed
Book A, vol. 56, p. 232.　About that time the property ceased
to be used for the purpose of a county jail.　The new prison is
removed more than a mile from the old location.

" The object of the bill filed in this case is to obtain the can-
cellation of the instrument of December 1, 1772, the plaintiff
alleging that she is anxious to sell the property of the testator,
' but is unable to do so at a proper and adequate price for the
reason that the said Rebecca Lauer and John W. Rhoads, de-
fendants in this suit, insist upon and have made public that
they are entitled to the rights and privileges of the county
commissioners contained in said agreement of December 1,
1772, and thereby have prevented and still prevent a sale of
said property for a proper price, to the great inconvenience and
damage of your orator.'

" The bill names as defendants the present commissioners of
Berks county, and Rebecca Lauer, executrix of William
Rhoads, Sr., deceased, and John W. Rhoads, the will of Wil-
liam Rhoads, Sr., deceased, giving the property to Rebecca
Lauer and John W. Rhoads for life, with remainder to their
children.

" The commissioners have demurred to the bill, while the remaining defendants have answered. By agreement, of counsel representing the several parties, the demurrer and the bill and answer were set down for hearing and argued at the same time.

" As preliminary to the decision upon either submission, we shall have to declare our interpretation of the instrument of first December, 1772.

" It is, in form, a conveyance to the commissioners and their successors in office, i. e., as these boards were then regarded as corporations : Vankirk v. Clark, 16 S. & R. 286, 290, a grant of the fee : 2 Blackst. Comm., p. 109. Moreover, the grant is of the land itself, subject to a conditional reservation (see Adams v. Valentine, 33 Fed. Rep. 1) of the use of the surface. There is, therefore, no room for the theory that the effect of the deed is to create an easement in favor of the grantees. An easement is a liberty, privilege or advantage which one may have in the lands of another without profit: Big Mount. Improvement Co.'s Ap., 54 Pa. 361, 369. It may be merely negative : 4 Lead. Cas. Amer. L. Real Prop., p. 125 ; and may be created by a covenant or agreement not to use land in a certain way : Ibid., p. 131. But it cannot be an estate or interest in the land itself, or a right to any part of it : Ibid., p. 121 ; Huff v. McCauley, 53 Pa. 206, 209 ; Grubb v. Grubb, 74 Pa. 25, 33. If any easement is created by this instrument it is by the reservation and in favor of the grantor. It seems clear that had the grantor or his assigns undertaken to use the land in a manner different from that permitted by the reservation, coupled with the proviso, the grantees or their successors could, by ejectment, have ousted them altogether : See Bear v. Whisler, 7 Watts, 144. But ejectment does not lie to enforce an easement or privilege : Black's Lessee v. Hepburne, 2 Y. 331 ; Union Canal Company v. Young, 1 Whart. 410, 424.

" In construing a deed, however, we are to look at it as a whole, so that no part of it may be rejected : Wager v. Wager, 1 S. & R. 374, 375. ' The premises of a deed are often expressed in general terms, admitting of various explanations in the habendum,' which ' may lessen, enlarge, explain or qualify the premises, but not totally contradict them : ' Ibid ; and for that purpose the court, in that case, interrogates the habendum

and the declaration of uses. These, in the present instance, could not have the effect of reducing the grant of a fee in the premises to anything less than a fee, but they can explain the nature of that fee to be either an absolute or a base or qualified one.

"It must not be forgotten that such a fee is nevertheless a fee simple, because it may last forever in a man and his heirs, the duration depending upon the concurrence of collateral circumstances which qualify and debase the purity of the grant: 2 Blackst. Comm., p. 109. The qualification must be found in the instrument itself: Union Canal Co. v. Young, 1 Whart. 410; Kerlin v. Campbell, 15 Pa. 500. But no especial or technical words are required to establish it: 2 Am. L. C. R. P., p. 23. 'The construction of a deed, as to its operation and effect,' says Kent, speaking of this very matter, 'will after all depend less upon artificial rules than upon the application of good sense and sound equity to the object and spirit of the contract in the given case:' 4 Kent, Comm., p. 132. What is needed is that the deed on its face contain a reservation or declare a specific purpose for which the land was conveyed and from which the reservation may be implied: Caton, J., in Adams County v. Logan County, 11 Ill. 336. Of course, the mere expression of a purpose will not of and by itself debase a fee. Thus, a grant in fee simple to county commissioners of land 'for the use of the inhabitants of Delaware county to accommodate the public service of the county,' was held not to create a base fee: Kerlin v. Campbell, 15 Pa. 500; as also a grant to county commissioners and their successors in office of a tract of land with a brick court house thereon erected 'in trust for the use of said county, in fee simple,' the statute under which the purchase was made authorizing the acquisition of the property for the purpose of a court house, jail and offices for the safe keeping of the records: Seebold v. Shitler, 34 Pa. 133. Similarly a devise of land to a religious body in fee 'there to build a meeting house upon,' etc., was held to pass an unqualified estate: Griffitts v. Cope, 17 Pa. 96; as was also a grant to a congregation 'for the benefit, use and behoof of the poor of said . . . . congregation . . . . forever, and for a place to erect a house of religious worship, for the use and service of said

congregation, and if occasion shall require a place to bury their dead : ' Brendle v. Germ. Ref'd Congregation, 33 Pa. 415.

" There are, however, about these cases some features which must not be overlooked. In Kerlin v. Campbell, supra, the conveyance was absolute, and the matter relied on to debase the fee granted by it was contained in another instrument to which the original grantor was not privy : p. 506. In Seebold v. Shitler, supra, the act of assembly authorizing the purchase required a conveyance to the commissioners of ' a full and sufficient deed in fee simple.' The court says that ' no conveyance for a less estate, or for a limited fee, clogged and confined with conditions or qualifications of any sort, would have fulfilled the requirements of the legislature ; ' and ' any other constructions would make the deed a fraud upon the citizens who erected the court house and upon the county that erected afterwards the county offices and the county jail, by a large expenditure of the county funds : ' page 137.

" But further it is apparent in all the cases cited, that the purposes for which the grants were made were really all the purposes for which the grantees could lawfully hold real estate. Unless, therefore, the absurd position be assumed that a corporation can in no event take a fee simple absolute, because its power to hold land is limited to the uses for which it is authorized to acquire and employ it, a declaration, in the grant, that it is conveyed for those uses cannot be deemed to import a limitation of the fee. *Expressio eorum quae tacite insunt nihil operatur.* Such a declaration can amount to no more than an explicit assertion of the intended legality of the grant. As was said, in the case of Griffitts v. Cope, supra, at p. 100 : ' the use to which the granting clause declares that this land is to be applied is of the character which the law requires and is the most ordinary purpose for which religious societies require land. The presumption would therefore appear fair and obvious, that by that declaration, the devisor merely meant to make the grant lawful upon its face ; ' and in Brendle v. German Reformed Congregation, supra, at p. 435 : ' What then is the efficacy of the declaration . that the congregation holds the land for the use of its poor, for a church, and for a burial ground ? Nothing, except to show that they hold it for the purpose for which the law allows congregations to hold land ;

not to limit their own title, but to recognize the uses allowed by law.'

" It is at once apparent that the present case is wholly different, in that the purpose expressed in this grant is not one for which counties usually acquire a fee simple in lands. What those purposes may lawfully be, since the act of April 15, 1834, is set forth in the proviso to section 3, clause 11, of that statute : 1 Purd. Dig., p. 364, pl. 14. Before its enactment, the general power of county commissioners to take lands was confined to such as were bought in by them to secure the county debts, on process from the courts, or their own process authorized by law, or mortgages given to secure the county debts : Vankirk v. Clark, 16 S. & R. 286, 290. That they might enter into a valid agreement with a property holder adjoining, e. g., a county prison, not to build against its walls, with a view to preventing the escape of prisoners while the building was used as a place for their confinement, seems scarcely doubtful. And if they might do that by a mere agreement, they might, in order to be in position to insure the accomplishment of the purpose, do so by taking a fee in the property to be kept open for such purpose. But they could not take more, they could not make an investment of more, than was required by the immediate and lawful object in view; that is to say, whilst they could take a fee, that fee must be determinable upon the cessation of the necessity or occasion of its acquisition and the possibility of serving the purpose of its creation.

" It is surely not unreasonable to suppose that this limitation upon the commissioners' powers, and the contingency that at some future time the use of their property as a jail should be abandoned, were in the minds of the parties to the deed of December 1, 1772, and had some influence in fixing the consideration for the grant. (The employment of the word ' forever ' seems insignificant in this connection ; for, as has been seen, the estate might continue forever, and so in that case would the purpose. On the other hand, a grant of an estate ' forever ' may yet be but of a life estate : 2 Blackst. Comm., p. 107.) Hence there is a peculiar propriety in applying to the parties' declaration of purpose the familiar principle of interpretation, *expressum facit cessare tacitum.* That declaration shows but one purpose, and shows it clearly. It was not to

afford light, air or access to the adjoining tenement, to add anything to it that was needful or convenient to its use and enjoyment, nor to increase the size of the plot upon which the prison stood, or to enhance its value, set off its architectural proportions, or protect it against fire. It was simply to serve the one declared object—the hindrance of the escape of prisoners, which the erection of walls contiguous to those of the prison would facilitate. In view of all the circumstances, there seems to arise from the express declaration of purpose a necessary implication of the exclusion of every other. It is a rule in the construction of a statute, pleading, contract, will and other instrument that what is clearly implied is as much a part of it as what is expressed: U. S. v. Babbit, 1 Black, 61 ; Hanchett v. Weber, 17 Ill. Ap. 114. The instrument under consideration is, therefore, to be treated precisely as if it contained a declaration that the grant was for the purpose mentioned and no other. But, where an estate is conveyed in fee for a specified purpose ' and no other,' the fee is a base fee determinable upon cessation of the use of the property for that purpose: Kirk v. King, 3 Pa. 436'; Scheetz v. Fitzwater, 5 Id. 126.

" It is scarcely needful to add that those decisions which relate to the construction of a deed as conveying an estate on condition subsequent, and deny that effect to a recital that the grant is upon a certain consideration, or to a collateral covenant: see Cook v. Trimble, 9 Watts, 15 ; Union Canal Company v. Young, 1 Wh. 410 ; Perry v. Scott, 51 Pa. 119 ; Method. Ep. Ch. v. Publ. Ground Co., 103 Id. 608—are inapplicable. The purpose here is not recited as part of the consideration, nor is its observance collaterally covenanted. Nor is the estate here granted one upon condition. Although there is some confusion in decisions and text books concerning these two species of estates, there is a radical distinction—and one, as we pointed out in the recent decision of this court in Schaeffer v. Messersmith, C. P. Berks County, No 105, May T., 1890, well established in the jurisprudence of this state—between a fee determinable by limitation and an estate upon condition subsequent: 2 Am. L. C. R. P., pp. 19, 20. Nor again does the case of Yeaton's Ap., 105 Pa. 125, relied on by respondents, bear upon the question in hand. That was the case of

an easement created by a covenant contained in a deed, in terms perpetual, not to build upon the north or east of the grantor's church building, excepting that, if the same should at any time cease to be used for that purpose, a wall might be built on the east side.   This was a limitation appointed by the parties themselves upon the effect of the abandonment of the then use of the dominant tenement, and in restricting the owner of the servient one to the terms of this limitation, the Supreme Court, in effect, but applied the principle which we have applied to this case : *Expressum facit cessare tacitum.*

" Of course, upon the determination of a base fee, the property reverts to the grantor: 2 Blackst. Comm., pp. 109–110; without any claim or act on his part where it is determinable by limitation: Schaeffer v. Messersmith, supra.   In the meanwhile, the estate is out of him, and all that remains to him is the mere possibility of reverter: 4 Kent, Comm., p. 10.   Yet this mere possibility is capable of transmission to his grantees and will pass to them under a conveyance of the reversion: Scheetz v. Fitzwater, 5 Pa. 126.

" We have next to pass upon the questions raised by the demurrer and by the submission of the cause upon bill and answer.

" *First.* As to the demurrer.   Taking up the grounds of demurrer, as they stand upon the record, we find—

" (1) An allegation contained in the first and second grounds, in substance, that the suit ought to be against the county of Berks, and not against the commissioners individually.

" The act of April 15, 1834, P. L. 537, provides in section 9, 1 Purd. Dig., p. 364, pl. 18, that the titles to all and singular the court houses, jails, prisons and workhouses, together with the lots of land thereunto belonging or appertaining, as they now are or heretofore have been, vested in the commissioners of the respective counties for the several use of the said counties respectively, shall be, and they are hereby declared to be vested in the respective counties for the use of the people thereof and for no other use ; and section 3 of the same statute : 1 Purd. Dig., p. 364, pl. 13, confers upon the several counties capacity, as bodies corporate, to sue and be sued as such by the corporate name.

" Whilst, as a general rule, land cannot be appurtenant to

land: Grubb v. Guilford, 4 W. 223, 244, yet it may be made so by the intent and acts of the parties: Ibid.; Grubb v. Grubb, 74 Pa. 25, 33.

" The use of this strip of land permitted by the deed of first December, 1772, indicates such an intention, at least sufficiently to permit it to be regarded as an appurtenance to the jail property within the spirit of the act of 1824, and as such to the extent of the estate held by the commissioners to have thereby become vested in the county of Berks. This suit, therefore, under the decision of Wilson v. Commissioners, 7 W. & S. 197, should have been brought against the county. But counsel for plaintiff and for the demurrants have agreed that in event of the court's so holding the bill should be amended by substituting the county of Berks as defendant in place of the commissioners named. Accordingly we shall treat the bill as properly brought against the county, and the formal amendment may be made hereafter. The other defendants are not thereby prejudiced. Having answered to the merits the objection could not, it would seem, be now made by them: See Glover v. Wilson, 6 Pa. 290, 292: Fritz v. Commissioners, 17 Id. 130, 134, 135; and, besides, ' if the misjoinder is of parties as defendants, those only can demur who are improperly joined:' Story, Eq. Pl., sec. 544.

" (2) The next ground of demurrer is that the interests of the defendants are not identical, but in conflict, and therefore they should not be joined in this proceeding. This assertion is based upon a misconception of the effect of the instrument of December 1, 1772. There cannot be any question of conflicting interests between these defendants.

" (3) It is next asserted that this court has no jurisdiction to declare null and void the deed of December 1, 1772, inasmuch as the same confers substantial rights upon the county of Berks or its grantee, and the title of said premises depends upon the same.

" What was the nature and extent of these rights and what the character of the title has already been declared. It is only necessary in this connection to examine into the jurisdiction of this court to grant the relief prayed for.

" The particular form of equity jurisdiction here invoked is that which is exercised to remove clouds upon title, the relief

in such cases being granted on the principle quia timet; that is, that the deed or other instrument constituting the cloud may be used injuriously or vexatiously embarrass or affect the plaintiff's title to real estate: 3 Pomeroy, Eq. Jur., sec. 1398. The existence of this as an independent source or head of jurisdiction in the courts of this state, not requiring any accompaniment of fraud, accident, mistake, trust or account, or any other basis of equitable intervention, is abundantly established: Dull's Ap., 113 Pa. 510; Stewart's Ap., 78 Id. 88; Wilson v. Getty, 57 Id. 266; Eckman v. Eckman, 55 Id. 269, 273; Kennedy v. Kennedy, 43 Id. 413, 417. The rules as to the status of the plaintiff to invoke the exercise of this jurisdiction, as laid down in 3 Pomeroy, Eq. Jur., sec. 1399, note 4, p. 36, approved in Dull's Ap., supra, at pp. 517, 518, are as follows: ' When the estate or interest to be protected is equitable the jurisdiction should be exercised whether the plaintiff is in or out of possession; but when the estate or interest is legal in its nature, the exercise of the jurisdiction depends upon the adequacy of legal remedies. Thus, for example, a plaintiff out of possession holding the legal title will be left to his remedy by ejectment under ordinary circumstances, but when he is in possession, and thus unable to obtain any adequate legal relief, he may resort to equity.' The occasions for and the mode of the exercise of the jurisdiction are stated to be the following: ' Whenever a deed or other instrument exists which may be vexatiously or injuriously used against a party after the evidence to impeach or invalidate it is lost, or *which may throw a cloud or suspicion over his title or interest, and he cannot immediately protect or maintain his right by any course or proceedings at law,* a court of equity will afford relief by directing the instrument to be delivered up and canceled, or by making any other decree which justice or the rights of the parties may require:' Martin v. Graves, 5 Allen (Mass.), 601, approved in Stewart's Ap., supra, at p. 96, and Dull's Ap., supra, at p. 516. And again: ' If a case is made out which will justify the court in declaring a contract at an end, it will in general be ordered to be delivered up to be canceled:' Wilson v. Getty, supra, at p. 270.

" It is objected, however, that ' the proper construction of a deed is not a subject of equitable jurisdiction:' Grubb's Ap.,

90 Pa. 228, 233. No doubt, there is not in this state, as there is in some others, any special jurisdiction conferred upon the courts of equity by reason of which they may be called upon to declare the construction of a deed, or will, or other instrument; nor, of course, will the mere fact that the proper construction of such is in dispute confer chancery jurisdiction, in the absence of some other recognized basis of equitable intervention. But it will scarcely be pretended, that, where a party has no legal remedy whereby to protect his property against the assertion of an unfounded or expired claim, the established equity jurisdiction is ousted by the mere fact, that, incidentally, it will be necessary to put a construction upon a written instrument. Such a doctrine would practically amount to a denial of the jurisdiction itself.

" Again it is urged upon us that a court of equity has no jurisdiction to settle a disputed legal right to land on a bill in equity filed by the party in possession, averring that a multiplicity of suits at law may result to redress threatened trespasses: Washburn's Ap., 105 Pa. 480. Of course not; but that. is not this case. In actions respecting real property, if there be no equitable ground of relief involved, the rights of the parties must be determined at law; the interference of equity in such a case resting on the principle of a clear right to the enjoyment of the subject in question and an injurious interruption of that right, which, upon just and equitable grounds, ought to be prevented, and the party contesting that right, in the first instance dependent upon conflicting proofs, being entitled to have them passed upon by a jury: Ibid. A very different case is presented when the intervention of the court is asked upon a recognized ground of equitable jurisdiction; when the rights of the parties result from an undisputed written instrument, aided by facts that are admitted; when the injury complained of, arising from conceded acts, is partly subsisting and actual and partly anticipated, and of such a character as to afford no redress at law. No doubt, if the plaintiff were to proceed to build upon the strip of land in dispute, it is possible that a suit at law would be instituted against him in which his rights would eventually be passed upon. But it is equally possible that no such suit would be brought, at least for a period of years. In the meanwhile, the title, not merely

the possession, would remain doubtful and unmarketable. But the owner of property has a right, not only to use it, but to sell it, and in that right, incapable of being enforced in any legal action he can institute, he is entitled to be protected.

" This ground of demurrer must, therefore, fall.

" (4) The last ground is that the plaintiff is not entitled to relief in this proceeding under the premises, as her predecessor reserved for himself and his assigns certain rights, which it is not averred have been interfered with.

" What has already been said sufficiently disposed of this ground of demurrer, which cannot be sustained.

" *Second.* As to the answer: But little remains to be said in passing upon the submission on bill and answer. The allegation of the respondents is, in substance, that the instrument of December 1, 1772, invested the grantees therein with an indefeasible right, which, by the deed of April 2, 1849, passed to William Rhoads, Sr., as appurtenant to the Old Jail Property.

" The estate of the county of Berks, under the instrument of December 1, 1772, being a base fee, whether principal or appurtenant to the Old Jail Property, it could pass to its vendee nothing more than it had: i. e., as to this strip of ground, nothing, if the estate had terminated before the date of the conveyance by an abandonment of the purposes of the grant; or an estate determinable upon such abandonment, if prior to it in date. 'If the owner of a determinable fee conveys in fee, the determinable quality of the estate follows the transfer, and this is founded upon the sound maxim of the common law, that *nemo potest plus juris in alium transferre quam ipse habet :* ' 4 Kent, Comm., p. 10. Indeed it is not clear how under the act of assembly authorizing the sale and conveyance under which respondents claim anything more could pass. If it were conceded that the estate of the county under the deed of December 1, 1772, was a fee simple absolute, it would still be true that the statute authorized but the sale of 'what is now called the Old Jail Property in the city of Reading, consisting of the old jail buildings and the appurtenances and *a lot of ground,* being on the corner of North Fifth and Washington streets, in the said city of Reading, and *having* 60 *feet on said North Fifth street,* and 230 feet on Washington street.' It was held in

Seebold v. Shitler, 34 Pa. 133, 137, that a deed from a private grantor to the county must be deemed to convey what the statute required. It would seem but a corollary to this rule that a deed from the county to a private grantee cannot convey more than the statute authorized.

" Upon the bill and answer it is clear that the respondents have no interest in or right over the eight feet wide strip of ground to the north of their tenement.

" In the consideration of this case it has been assumed, nor was it questioned upon the argument, that the conveyances by plaintiff's predecessors in title, during the continuance of the estate granted by the deed of December 1, 1772, included the reversion of this strip of land. The usual form of conveyances in fee simple contains such a grant, and it may be supposed that those forming the chain of plaintiff's title were not exceptional in this respect. Yet the fact ought to be made to appear in this record, and for that purpose leave will be given to plaintiff to amend her bill by proper averments.

" That done, plaintiff will be entitled to the relief prayed for, and counsel will prepare and submit the necessary decrees in accordance with the views expressed in this opinion."

Subsequently the court entered the following decree :

" And now to wit, January 29, 1891, it is ordered, adjudged and decreed that Cyrus Kauffman, Franklin Seidel and Jarius Reeser, county commissioners, representing the said county of Berks as defendants in above suit, do forthwith surrender and deliver up to the said plaintiff the deed from George Fleisher and Margaret, his wife, to Henry Reuthmeyer, David Brecht and Abraham Lincoln, county commissioners of said county, dated December 1, 1772, and recorded 'in the recorder's office of Berks county in Deed Book B, vol. 2, page 71, and set forth in said plaintiff's bill, and that Simpson Becker, the recorder of said county, do forthwith cancel the same upon said record, and it is further ordered, adjudged and decreed that the costs in this suit be paid by defendants." [3]

Defendant, Rebecca Lauer, appealed.

*Errors assigned* were (1) deciding that the conveyance of 1772 passed but a base fee determinable upon the abandonment of the use for which the strip of ground was originally granted; (2) deciding that respondents had no interest in or right over

the strip of ground in dispute; (3) the decree entered, quoting it.

*J. H. Zweizig*, with him *J. H. Jacobs* and *H. P. Keiser*, for appellant.

The use to which the granting clause declared that the land was to be applied was one which it was within the limited powers of the commissioners to provide for. The presumption would therefore appear fair and obvious that by that declaration the parties merely meant to make the grant lawful upon its face.

That a mere declaration of purpose cannot create a condition to defeat the estate granted, even in case of a devise or voluntary grant, when part, if not all the consideration for the grant is the purpose for which the estate is declared to be created, may be seen in the following cases: First Methodist Episcopal Church of Columbia v. Old Columbia Public Ground Co., 103 Pa. 608; The Plymouth Mfg. Co.'s Ap., 81* Pa. 147; Rawson v. Inhabitants of School District No. 5 in Uxbridge, 7 Allen, 125; French v. Inhabitants of Quincy, 3 Allen, 9; Proprietors of the Church in Brattle Square v. Moses Grant et al., 3 Gray, 142; Griffitts v. Cope, 17 Pa. 96; much less when full value is paid as in Kerlin v. Campbell, 15 Pa. 500, and Brendle et al. v. The German Reformed Congregation of Jackson Township, et al., 33 Pa. 415.

*E. B. Wiegand*, for appellee.

PER CURIAM, March 28, 1892:

The opinion of the learned judge of the court below is so full and satisfactory that we affirm the decree for the reasons there given by him.

The decree is affirmed and appeal dismissed at the costs of the appellant.