Clarence LOTZE, Appellant,

v.

GARRENE REALTY & DEVELOPMENT COMPANY, Inc., and Louisville & Jefferson County Planning & Zoning Commission, Appellees.

Court of Appeals of Kentucky.

Dec. 5, 1957.

Rehearing Denied Feb. 28, 1958.

Michael M. Hellmann, Stephen P. Smith, Jr., Louisville, for appellant.

Allen Schmitt, James L. Taylor, Louisville, for appellees.

CAMMACK, Judge.

This action was instituted in April, 1954, by the appellant, Clarence Lotze. He sought (1) a judgment against the appellee, Garrene Realty & Development Company, Inc., estopping and enjoining it from interfering with him and the public in general in passing over a six-inch strip of land between Plymouth Road and the appellant's land; or (2) a mandatory injunction requiring the other appellee, Louisville & Jef-

ferson County Planning & Zoning Commission to (a) rescind and revoke its approval of the Garrene Village subdivision, or (b) order the Garrene Realty & Development Company to revise its subdivision plan so as to include for public use the six-inch strip of land in question. The trial judge entered a judgment in accord with the following language of his able opinion:

"I think the equitable result in this case is a holding that Garrene Realty & Development Co. will be estopped from denying the dedication of the six-inch strip upon one condition. That condition is that the plaintiff be first required to pay to the Garrene Realty Company an amount equal to one-half of the reasonable cost of the construction of Plymouth Road at the time it was constructed, calculated upon the number of running feet that the remaining land of Mr. Lotze fronts thereon. In other words, the cost to Mr. Lotze shall represent one-half of the cost of the road in front of his vacant land. * * *"

Lotze is appealing from both phases of the judgment. The Zoning Commission has filed a brief in support of the position of Lotze, insofar as the judgment denies a dedication of the six-inch strip and requires payment by Lotze to the Realty Company. Since the questions are so closely related, and affect the public interest, we will discuss them together.

On April 23, 1952, the Planning & Zoning Commission approved a plat filed by the Realty Company, which included the following provision:

"The undersigned owner of the property shown on the foregoing plan do hereby acknowledge the same to be the plan of 'Garrene Village' subdivision and do hereby dedicate the public use the roads and avenues, and the 23.5' added to Breckinridge Lane, all enclosed by red lines as shown hereon."

Unfortunately, the photostatic copy of this plat which has been made a part of the record has no markings in red, but it does have a double line marking the edge of Plymouth Road in front of Lotze's land where the attempted six-inch reservation is alleged to have been located. The plat fails to disclose the owner of the land adjacent to this double line as required by KRS 100.088.

The Realty Company, through its agent, Mr. Garrene, attempted to buy Lotze's land prior to the time the plat was filed, but Lotze refused to sell. Thereupon Garrene notified Lotze that he would reserve ownership in a six-inch strip between Lotze's land and Plymouth Road in order to prevent use of the road by Lotze. There is evidence that Garrene then had the surveyor's stakes moved in an attempt to accomplish the six-inch reservation. The evidence is conflicting as to whether Lotze knew the stakes were being moved to accomplish that purpose. Since we believe there was a dedication of the six-inch strip to public use, it is unnecessary to discuss the question of notice.

■■ The trial commissioner to whom the case was first assigned cited Cassell v. Reeves, Ky., 265 S.W.2d 801, as authority for the proposition that a dedication of the six-inch strip had been made by the Realty Company. In the Cassell case we said that dedication to public use by plat is a common method and in its interpretation all doubts as to the intention of the owner are resolved most strongly against him. We said also that generally an open or vacant space may be held devoted to public use where from its position on and relation to the plat such appears to have been the intention of the owner. See also 16 Am.Jur., Dedication, sections 22, 24.

■ In the case at hand there was no express reservation of the six-inch strip. The plat does not even indicate the existence of the six-inch strip, unless the presence of a double line could be said to so indicate, nor did the required designation of the owner appear. From the position of the double line on and its relation to the plat

it can not be said that it shows the intention of the dedicator to attempt to reserve a six-inch strip of land. Furthermore, the Zoning Commission was not notified of any attempted reservation. We believe the dedicator, the Realty Company, is now estopped from asserting that the dedication of Plymouth Road did not include the six-inch strip in dispute.

The Realty Company insists that to force this dedication upon it without requiring payment from Lotze allows him to be a "free-loader"; but to hold otherwise would make it possible for subdividers to become "free-loaders" by shouldering onto others a part of the cost of roadways running along their property. Under such conditions owners of land adjacent to subdivisions could be forced to pay paving costs or forced to sell their lands to the subdivider. The case at hand is illustrative of such a situation. Then too, to uphold the actions of the Realty Company would put a stamp of approval upon a practice which could produce havoc in the planning and developing of subdivisions. When an improvement is made upon property it may enhance the value of adjacent lands, but adjacent landowners should not be forced to pay for a public roadway built by a subdivider any more than they should be forced to pay for the shade contributed by a neighbor's trees. The subdivider builds upon his own initiative and for his own benefit and should not be allowed to require his incidental beneficiaries to pay for their unsought gains.

In discussing the case primarily from the point of view of "public interest," we have not been unmindful of the sincere efforts of the trial judge to balance the equities between the Realty Company and Lotze. Were the case confined *solely* to the interests of these two parties we would have a different question before us. But, as we have shown, public rights and interests are involved.

The judgment is reversed, with directions to set it aside, and for the entry of a judgment consistent with this opinion.