687 P.2d 404

**Mary Zuck LACER, Plaintiff-Appellant,**

v.

**NAVAJO COUNTY, a body politic; Norman H. Turley, Johnny L. Butler and Charles H. Patterson, as members of and constituting the Board of Supervisors of Navajo County; the State of Arizona, a body politic; the Holbrook Chamber of Commerce; John Does I–X; Jane Does I–X; and Black and White Corporations I–X, Defendants-Appellees.**

No. 1 CA–CIV 5508.

Court of Appeals of Arizona, Division 1, Department A.

Jan. 25, 1983.

Reconsideration Denied March 4, 1983. Review Denied April 5, 1984.

See also Ariz.App., 687 P.2d 400.

Verkamp & Verkamp by John G. Verkamp, Flagstaff, and Fleming, Pattridge, Hacking & Gardner by Conrad E. Gardner, Golden, Colo., for plaintiff-appellant.

Jay V. Flake, Navajo County Atty. by Dale K. Patton, Jr., Deputy County Atty., Holbrook, for defendants-appellees.

## OPINION

KLEINSCHMIDT, Judge.

This is an action on a claim for the land upon which the old Navajo County Courthouse sits. The appellant is the sole surviving heir of the original grantor to the county. Following trial the court found that the appellant had no interest of any kind in the land and entered judgment for the defendants. The action is based upon a number of theories which we will consider separately below. It arises out of the following facts.

The plaintiff's father, Frank A. Zuck, a prominent citizen of Navajo County at the turn of the century and the original owner of the land, deeded it to Navajo County by an instrument dated January 31, 1898, which read, in its granting clause, as follows:

Know all men by these presents that I, Frank A. Zuck, of the county and territory aforesaid, for and in consideration of the sum of One (1) Dollar, lawful money of the United States, in hand paid by said County of Navajo, Territory of Arizona, the receipt of which is hereby acknowledged, have granted, sold and conveyed and by these presents, do grant, sell and convey unto the said County of Navajo, Territory of Arizona, the following described lot or parcel of land, lying and situate on the townsite quarter (¼) SEction [sic] of the Town of Holbrook in the said county and territory and more fully described as follows, to wit: [legal description omitted] *the title to which said foregoing described tract or lot of land shall vest in said County of Navajo, Territory of Arizona at any time, said county shall or may begin the erection the erection [sic] of a courthouse and jail for use of said county, on said tract or lot of land and shall be used for no other purpose.* (Emphasis added.)

Thereafter, in the habendum clause, the instrument reads:

*to have and to hold the said described premises for the purposes hereinstated ......... unto the said County of Navajo ........, their heirs, assigns and successors, forever. And I do hereby bind myself, my heirs, executors and administrators to warrant and defend ........ the said premises unto the said County of Navajo ..... their heirs, assigns and successors ....* (Emphasis added.)

There was evidence that before the turn of the century several communities in Navajo County were vying to be the county seat and it can easily be inferred that one of Frank Zuck's purposes was to secure that advantage for Holbrook.

After receipt of the deed Navajo County constructed a county courthouse and jail on the site and the property was used for those purposes until 1976 when a new courthouse and jail were constructed at another location in the county. Thereafter, the building was used as offices for the county health department and for the storage of superior court case files, court reporters' notes, about one-third of the county law library, jail records, election materials and records of the county assessor and treasurer. It also housed some offices of the State Department of Economic Security. Located on the same grounds is an office of the Holbrook Chamber of Commerce. Both the Presiding Judge of the Superior Court of Navajo County and a

member of the county board of supervisors testified that the building could still be and might be used for court purposes and that the jail could be used to détain overflow prisoners.

There is no evidence as to what actual consideration passed for the deed but the record does show that on April 5, 1898, the board of supervisors canceled property taxes for the preceding year on the parcel in question in the amount of $177.97. There was evidence that this was done in consideration for the conveyance of the land to the county although the same was less than the fair market value of the property.

In 1923 Frank A. Zuck filed a petition in bankruptcy in which he disclaimed any interest, reversionary or otherwise, in the land involved in the transaction.

There was no evidence that at the time of the conveyance Frank Zuck owned any other real property and appellant owns no real property in the State of Arizona at this time. We turn to the appellant's separate theories of recovery.

The plaintiff contends that as the sole surviving heir of Frank Zuck she has a reversionary interest in the property. She says that the conveyance created either a fee simple determinable or a fee simple subject to a condition subsequent. On this issue the trial court granted partial summary judgment in favor of the defendants and held that the plaintiff had no reversionary interest in the courthouse property.

### FEE SIMPLE DETERMINABLE

■ The deed did not grant a fee simple determinable. A fee simple determinable is created by any limitation in a conveyance which creates an estate. in fee simple and then provides that the estate shall automatically expire upon the occurrence of a stated event. *Restatement of Property*, § 44 (1936). Such an intent is usually manifested by a limitation which contains the words "until", "so long as", or "during". *Restatement of Property*, § 44, comment 1 (1936). The conveyance must express the intent of the grantor that the estate will automatically expire upon the happening of

an event and a mere statement as to the purpose of the grant is not sufficient. *Restatement of Property*, § 44, comment m (1936) provides:

> When a limitation merely states the purpose for which the land is conveyed, such limitation usually does not indicate an intent to create an estate in fee simple which is to expire automatically upon the cessation of use for the purpose named.

The *Restatement* illustrates as follows: A, owning Blackacre in fee simple absolute, transfers Blackacre 'to B and his heirs to and for the use of the C church and for no other purpose.' B has an estate in fee simple absolute and not an estate in fee simple determinable.

A case in point is *Stuart v. City of Easton*, 170 U.S. 383, 18 S.Ct. 650, 42 L.Ed. 1078 (1898), in which the deed stated that the conveyance was "to and for the erecting thereon a courthouse for the public use and service of said county, and to and for no other use, intent, or purpose whatsoever." The county used the property for a courthouse for over a hundred years but then ceased to use it for that purpose. The sole heir of the original grantor, contending that the conveyance created a fee simple subject to a condition subsequent, entered the property alleging that the deed created a defeasible fee and that when the property ceased to be used as a courthouse, title to it reverted to him. The Supreme Court of the United States rejected this argument and in doing so pointed out that there was an absence of words such as "while", "so long as", "until", or "during". The court concluded that a grant for a special purpose, without other words, does not make an estate conditional and that in this case, the language used in the conveyance was a description of the reason the property was deeded to the county and reflected on what legal basis the county was authorized to pay consideration for it.

The appellant argues that *Stuart v. City of Easton* is distinguishable because the land had been conveyed pursuant to a statute that authorized certain trustees to ac-

cept a deed for the purpose of establishing a courthouse and that it was therefore necessary to recite a purpose in the deed to show by what authority the trustees were receiving the land. There are two reasons why appellant's argument fails. First, *Stuart v. City of Easton, supra,* is clearly, if partially, predicated on the absence of words in the conveyance like "while" or "until"; and second, there was good reason in this case, just as there was in *Stuart,* for the grantor to express the reason for the grant as a mere purpose. The conveyance was not to take effect until the construction of the courthouse and jail had begun. The deed which we construe here reflects no more intent to create a defeasible fee than did the deed construed in *Stuart v. City of Easton.*

In a somewhat similar case, *City of Tempe v. Baseball Facilities, Inc.,* 23 Ariz. App. 557, 534 P.2d 1056 (1975), the city had refused to issue certain privilege tax permits to the appellee on the grounds, among others, that the land in question was subject to a reversionary interest in the county if a deed restriction were violated. The deed restriction provided:

> Subject to the restriction that the ... real property shall be operated and maintained solely for park, recreational and public accommodation, and convenience purposes.

The City contended that the use appellee applied for would violate the restriction. This court noticed the absence of words like "while", "during", "until", or "so long as" in the restriction and concluded that the language could be considered merely precatory or as a restrictive covenant and declined to find that it created a fee simple determinable.

The appellant has cited five cases for the proposition that the language of the deed can be construed to create a determinable fee. We discuss each briefly.

In *Papst v. Hamilton,* 133 Cal. 631, 66 P. 10 (1901), the court held that a fee simple determinable may be created by language which states a condition upon which the grant is made. The deed specifically limit-

ed the conveyance "upon the conditions, however, that the premises shall be used solely for the purpose of erecting, furnishing, keeping, and maintaining thereon an academic or collegiate school ... and for no other purpose whatever." This was enough to create a conditional estate. There is no such language in the deed we construe.

In *Martin v. The City of Stockton,* 39 Cal.App. 552, 179 P. 894 (1887), the deed stated that it was "subject to the conditions, limitations and restrictions hereinafter expressed." This was held to state more than a mere purpose for the conveyance and was construed to create a conditional deed. The holding in *Upington v. Corrigan,* 151 N.Y. 143, 45 N.E. 359 (1896) is based on similar conditional language and that is also true of *City of New York v. Coney Island Fire Dept.,* 285 N.Y. 535, 32 N.E.2d 827 (N.Y.App.1941), although the precise words of the conveyance are not set forth in the opinion. In *Slegel v. Herbine,* 148 Pa. 236, 23 A. 996 (1892) the grantors expressly reserved a substantial part of the use of the land for themselves.

## FEE SIMPLE SUBJECT TO A CONDITION SUBSEQUENT

A fee simple subject to a condition subsequent is created by an effective conveyance in fee simple which provides that upon the occurrence of a stated event the grantor or his successor shall have the power to terminate the estate created. *Restatement of Property* § 45 (1936). The reversion is not automatic but depends upon a decision on the part of the grantor to re-enter. The instrument of conveyance must manifest the conditional nature of the deed and must contain some provision demonstrating the grantor's power to re-enter and terminate. Since forfeitures are not favored the intent must be clear. *Restatement of Property* § 45, comments i and j (1936).

Particularly pertinent to this question is comment o to the *Restatement.* It provides:

When an otherwise effective conveyance contains a mere statement of the use to which the land conveyed is to be devoted, or, of the use, in consideration of which, the conveyance is made, such statement alone is not sufficient to cause the estate created to be an estate in fee simple subject to a condition subsequent.

. . . .

A, owning Blackacre in fee simple absolute, transfers Blackacre "to B (an appropriate county official) and his heirs and successors, to be used as and for a county high school ground". B does not have an estate in fee simple subject to condition subsequent.

A, owning Blackacre in fee simple absolute, transfers Blackacre "to B and his heirs in further consideration that the said grantee shall keep on said property a first class hotel, and shall not use the property for any other purpose than the hotel business". B has an estate in fee simple absolute.

We think those principles as illustrated by the examples from the *Restatement* apply. So too do the holdings in *Stuart v. City of Easton, supra*, and *City of Tempe Baseball Facilities, Inc., supra*, both of which consider whether a condition subsequent was created.

## DEDICATION TO PUBLIC USE

The appellant next takes the position that if the deed did not create a reversionary interest it did constitute a dedication of the land to the public use. She argues that since the land is no longer used for the public purpose intended it now is hers as the heir of the grantor free of any public use. In addressing this issue we pass over appellee's objection that this issue was not timely raised and we also assume, without deciding, that the land is no longer used for the public purpose for which it was granted.

■ The effect of a dedication to public use is that the public acquires only the use of the property and the fee remains with the dedicator. *Allied American Inv. Co. v. Pettit*, 65 Ariz. 283, 179 P.2d 437 (1947). An intent to dedicate must be clearly shown and the burden of proof of establishing a dedication is on the one asserting it. *City of Scottsdale v. Mocho*, 8 Ariz.App. 146, 444 P.2d 437 (1968). Such manifestation must be inconsistent with any other purpose, *State Highway Commission v. Thornton*, 271 N.C. 227, 156 S.E.2d 248 (1967) and ambiguities in the instrument of conveyance will be construed against the dedicator and in favor of the public. *Lotze v. Garrene Realty & Development Co., Inc.*, 309 S.W.2d 750 (Ky.App. 1958).

■ There is nothing in the Zuck deed that evinces an intent to dedicate as opposed to convey in fee simple. The deed "grants", "sells", and "conveys" in return for consideration recited and speaks of title vesting in the county when construction of the courthouse is begun. As noted in *Stuart v. City of Easton, supra*, even nominal consideration is sufficient to divest title. Everything in the record, including the grantor's disclaimer of any remainder interest in the land at the time he was going through bankruptcy, points to an outright conveyance of the fee as opposed to a mere dedication.

Since there was no dedication it is unnecessary to decide whether the use to which the property has been put constitutes a misuse or abandonment by the county.

## RESTRICTIVE COVENANT

■ Another argument appellant advances is that the deed created a restrictive covenant. To this the defendants interpose the defense of lack of standing. Appellant, in turn, contends that this defense was raised too late. A review of the record shows that there was little focus on the issue of the purported restrictive covenant until after the trial court had granted the defendants' motion for partial summary judgment on the issue of a reversionary interest. The defendants submitted a Memorandum of Law on the issue of a restrictive covenant which addressed the

question of standing. The appellant neither objected to nor responded to this memorandum, nor did she object to the listing of the issue as a matter for trial in appellees' pretrial statement. The trial court denied appellant's request to add a party plaintiff whose presence might have obviated the defense of lack of standing and the case proceeded to trial and evidence was taken which had a bearing on the standing issue. Since no addition of parties could enhance the appellant's rights and since the trial could have no bearing on the rights of those not parties to it, we see no abuse of discretion in the trial court's consideration of the issue of standing.

Assuming that the deed creates a restrictive covenant which limits the use of the property to a courthouse and jail the appellant has no standing to raise the issue. Unless the covenant is one which runs with the land only the person to whom the promise is made or a third party beneficiary of the promise may enforce it. *Restatement of Property* § 542 (1944). In order to enforce the promise the successor to the original grantor, whether heir or assignee, must retain an interest in land which the promise was intended to benefit at the time it was made. Otherwise the promise merely creates a personal covenant. *Smith v. Second Church of Christ*, 87 Ariz. 400, 351 P.2d 1104 (1960); *R. & R. Realty Co. v. Weinstein*, 4 Ariz.App. 517, 422 P.2d 148 (1967).

There was no evidence that the original grantor owned other land at the time he conveyed the property to the county and the appellant owns no land at all in the State of Arizona. The suggestion that the presence of family graves in Navajo County will support the enforcement of restrictions is no more than that—a mere suggestion unsupported by reason or authority.

We nevertheless consider whether the deed created a restrictive covenant which is now enforceable. We conclude, on the record before us, that it did not. Such covenants are not favored in the law and doubts and ambiguities regarding their existence and enforcement are to be resolved against the restriction. *Duffy v. Sunburst Farms East Mutual Water and Agricultural Co., Inc.*, 124 Ariz. 413, 604 P.2d 1124 (1979). Here, as appellant concedes, the land was conveyed to the county to induce it to make Holbrook the county seat. To achieve this purpose the grantor made certain that the conveyance would not be effective until construction of the courthouse and jail was actually begun. What is lacking is any indication of what was to happen in the event the property ceased to be used for the stated purpose. It is not possible to tell from this record whether the grantor would have been content to see the property used for a courthouse for only so long as was necessary to secure the county seat for Holbrook, or for Holbrook and its environs, or for a term of years, or for the grantor's lifetime, or perhaps for so long as the grantor's descendants resided in Navajo County. A covenant may terminate by virtue of the fact that there are no longer persons entitled to enforce it. 7 *Thompson on Real Property*, § 3174 (1962). That appears to be the case here but even if not, we believe that any restriction on the use of the property has nevertheless terminated. If there has been a fundamental change in circumstances which would defeat or frustrate the original purpose of the restriction the same is unenforceable. *Decker v. Hendricks*, 97 Ariz. 36, 396 P.2d 609 (1964); *Murphey v. Gray*, 84 Ariz. 299, 327 P.2d 751 (1958); 7 *Thompson, supra*. This so-called "doctrine of changed circumstances" has been said to relieve against the enforcement of a covenant "if conditions have so changed since the making of the promise as to make it impossible longer to secure in a substantial degree the benefits intended to be secured by the performance of the promise." 5 *Powell on Real Property* § 679[2] at p. 60–131 (1980). So, too, if the enforcement of a restriction will harm a defendant without substantially benefiting a plaintiff's land it will not be enforced. 5 *Powell, supra*, § 679[2]. It has also been held that such restrictions are subject to reasonable

time limitations. *Crissman v. Dedakis,* 330 So.2d 103 (Fla.App.1976).

The trial court found that the covenants and restrictions contained in the Zuck deed had been totally performed and fulfilled in accordance with the intent of the grantor. In doing so, the court looked at the same factors that the county board of supervisors considered when it decided to move the county complex to a large tract of inexpensive land on the outskirts of Holbrook. Among them was evidence of the age, design, and condition of the courthouse and jail buildings as well as the limited space available for expansion of the building and adjacent parking areas together with the increased public demands for county services. We believe that the foregoing brings the doctrine of change in circumstances into play and we concur in the trial court's findings.

Finally, the appellant contends that if the covenant is personal she may bring an action on it pursuant to the Arizona survival statute, A.R.S. § 14–3110. Assuming that her application of the statute is otherwise correct there are two reasons why this argument fails. First, only the personal representative of the deceased may bring an action under A.R.S. § 14–3110. It is undisputed that the estate of Frank A. Zuck was never probated and that no personal representative was ever appointed. Lacking this, no action may be brought. *See* 20 Am.Jur.2d *Covenants* § 23 at 594 (1965) and cases cited in footnote 4 thereto. Second, since as we have already found, changed circumstances have extinguished the restriction, no action may be brought thereon.

### OTHER EQUITABLE THEORIES

The appellant contends, on the authority of *Stansbery v. First Methodist Episcopal Church,* 154 P. 887, 79 Or. 155 (1916), that the words of the deed create a trust under which the land can only be used for a courthouse and that the same can be enforced by injunction. We believe that such a remedy would be contrary to the law as we have expressed it in our

discussion relating to reversionary interests and particularly to the *Restatement of Property* § 45, comments i and j (1936). Nor does it comport with the doctrine of changed circumstances which we have discussed in connection with the question of whether the deed creates a restrictive covenant.

The judgment of the trial court is affirmed.

OGG, P.J., and CORCORAN, J., concur.