## Calder versus Chapman.

1. Calder purchased a tract of land, excepting out of it a described lot; he then mortgaged the whole, not making any exception of the "lot," and afterwards became owner of the "lot." A judgment was subsequently entered against him, under which the lot was sold ; after the sale the *whole tract* was sold under the mortgage. *Held*, that the purchaser under the judgment acquired the title to the lot.

2. The search for encumbrances against Calder on the lot, would begin with the conveyance to him ; there would therefore be no notice of the mortgage against him.

3. The doctrine of estoppel concludes the truth in order to prevent fraud and falsehood, and imposes silence on a party only when in conscience and honesty he should not be allowed to speak.

ERROR to the Court of Common Pleas of *Wayne county.*

This was an action of ejectment by Abner Chapman against Alexander Calder, William C. Marshall and Walker Marshall, for a tract of about 30 acres of land. Israel Chapman and Alexander Calder being the joint owners of a large tract of land, made partition, and Chapman conveyed to Calder the one-half, " excepting from and out of the above described premises the undivided two-thirds part of the ' Factory Lot.' " Subsequently, under proceedings in partition, Chapman acquired title to the whole " Factory Lot." Afterwards, November 1st 1853, Calder mortgaged to the Marshalls, defendants, the whole tract, describing it by metes and bounds, which included the " Factory Lot." The lot was not excepted from the mortgage. Chapman having died, his executors conveyed the " Factory Lot" to Calder, September 21st 1854. On the 5th of August 1858, a judgment was recovered against Calder, under which the " Factory Lot" was sold to Abner Chapman, plaintiff, and conveyed to him by the sheriff, September 4th 1862. The whole tract was, on the 2d of September 1862, sold by the sheriff to the Marshalls under their mortgage. Chapman then brought this action of ejectment.

On the trial, Barrett, P. J., charged, amongst other things :—

[Calder *v.* Chapman.]

" The question raised is, Whether the " Factory Lot" was bound by the mortgage. As between the parties it clearly would have been. The mortgagor might have perfected his title to the land for the benefit of the mortgagee. But we have to deal with subsequent lien-creditors. The judgment was entered against property acquired subsequent to the mortgage. It became at once a lien. A judicial sale conveyed it clear of any lien under the mortgage.

" As between the lien-creditors the judgment had preference. But however that may have been, it was a judicial sale, and the title to the "Factory Lot" passed to the plaintiff. If Chapman was an innocent purchaser, then he took it discharged from the lien of the mortgage. If he was not, did the record furnish him notice of any lien? It must have shown that the title to the lot was acquired subsequently to the making and recording of the mortgage. This being the fact, the verdict of the jury must be for the plaintiff."

The jury having found for the plaintiff, this instruction was assigned for error.

*F. M. Crane,* for plaintiffs in error.—Does the mortgage cover the land subsequently acquired by Calder, and does the title enure to the benefit of the mortgagee ?

The legal title of the land is in the mortgagee : Lyle *v.* Ducomb, 5 Binn. 587 ; Garre *v.* Thompson, 7 Watts 419 ; Kuhn's Appeal, 2 Barr 266 ; Martin *v.* Jackson, 3 Casey 509 ; Act of 6th of April 1830, Purdon 1861, p. 325 ; Schuylkill Navigation Co. *v.* Thoburn, 7 S. & R. 419 ; Borough of Easton's Appeal, 11 Wright 265 ; Clark *v.* Martin, 13 Id. 303 ; Brown *v.* McCormick, 6 Watts 63 ; Armstrong *v.* Boyd, 3 Penna. R. 459 ; Whiting *v.* Dewey, 11 Pick. 428 ; Wynne *v.* Cabot, 18 Id. 553 ; 14 Id. 411.

*S. E. Dimmick,* for defendant in error.—When the Marshalls took their mortgage they had notice by the record that Calder had no title to the " Factory Lot:" Naglee *v.* Albright and Others, 4 Whart. 291 ; Stonebreaker *v.* Short *et al.,* 8 Barr 155. Whatever may be the effect of a mortgage as between the parties —mortgagor and mortgagee,—as between creditors it is only a *chose in action,* an *encumbrance,* a *lien* upon the land : Claason's Appeal, 10 Harris 359 ; Craft, to use of Powell, *v.* Webster, 4 Rawle 255 ; Presb. Corporation *v.* Wallace and Others, 3 Id. 109 ; Woods *v.* Wallace, 10 Harris 177 ; Love *v.* Jones, 4 Watts 471 ; Hendrickson's Appeal, 12 Harris 364 ; Schuylkill Nav. Co. *v.* Thoburn, 7 S. & R. 419 ; 4 Kent's Com. 160 ; Meyers *v.* White, 1 Rawle 355 ; Rickert *v.* Madeira, Id. 329. A title must be vested before a mortgage-creditor can have a lien : Hiester *v.* Green, 12 Wright 96 ; Wilson *v.* Shoenberger, 10 Casey 124 ; Kaine *v.* Denniston, 10 Harris 203 ; Prebles *v.* Reading, 8 S. &

[Calder v. Chapman.]

R. 496; Dennison's Appeal, 1 Barr 206; Colhoun v. Snider, 6 Binn. 147.

The records gave no notice, for we are not to be affected by any entries *prior* to Calder's acquiring title: Mellon's Appeal, 8 Casey 129; Magaw v. Garrett, 1 Id. 319; Heister v. Fortner, 2 Binn. 46; Stewart v. Freeman, 10 Harris 120; Irvine and Others v. Campbell, 6 Binn. 119; Goepp v. Gartiser, 11 Casey 133; Boynton v. Winslow, 1 Wright 315; Uhler v. Hutchinson, 11 Harris 110; Jaques v. Weeks, 7 Watts 261; Hibbard v. Bovier, 1 Grant 266; 4 Kent's Com. 5th ed. 173; Woods v. Farmere, 7 Watts 385; McLanahan v. Reeside, 9 Id. 510; Ripple v. Ripple, 1 Rawle 386; Keller *et al.* v. Nutz *et al.*, 5 S. & R. 246; Lightner v. Mooney, 10 Watts 407; Martin v. Jackson, 3 Casey 508; Hetherington v. Clark, 6 Id. 395; Meehan v. Williams, 12 Wright 243; Brown v. Simpson, 2 Watts 245; Tyson v. Passmore, 2 Barr 122; Charnely v. Hansbury, 1 Harris 17; Kennedy v. Skeer, 3 Watts 95.

The opinion of the court was delivered, October 17th 1866, by

READ, J.—At the time Alexander Calder executed the mortgage to William C. Marshall and Walker Marshall of the 30 acres called the "Factory Lot," included in the boundaries of a larger piece of land embraced in the mortgage, the mortgagor had no title or estate of any kind in the said "Factory Lot." The mortgage was dated November 1st 1853, and recorded on the 3d.

At the time of the execution, Israel Chapman was the undisputed owner of the 30 acres, and he died in July 1854; and Abner Chapman, who was one of the sons of Israel, with the executors and other heirs of the said decedent, by deed dated September 21st 1854, conveyed the "Factory Lot" to Alexander Calder.

The judgment of Van Dusen & Jagger against Alexander Calder was entered August 5th 1858; and, on the 23d of August 1862, the "Factory Lot" was sold thereon, by the sheriff, to Abner Chapman, and deed executed to him and acknowledged by the sheriff, September 4th 1862. The moneys arising from the said sale being applied to an earlier judgment of Hornbeck v. Calder.

The Marshalls proceeded on the mortgage, and on the 2d September 1862, the sheriff, under *levari facias*, sold the larger tract, including the thirty-acre "Factory Lot," to the plaintiffs, the Marshalls; the deed to them was executed and acknowledged September 4th 1862.

The question is, by these sales who became the owner of the "Factory Lot?" Was it Chapman, or the Marshalls?

It is said, "that if a man sells and conveys land to which he has no right or title, and afterwards buys or acquires the title to

[Calder *v.* Chapman.]

the same land, he cannot claim it as against his grantee ;" and, whether this rule is based on estoppel or rebutter, or upon the equity as practised in Pennsylvania by which that which ought to be done is considered as done, is perhaps immaterial, as the effects of our recording acts must be the same in either case.

This whole subject has been fully ventilated by Judge Hare in his very able note to the Duchess of Kingston's Case, in · 2 Smith's Lead. Cas. pp. 705, 723–4 (ed. 1866), and in Mr. Rawle's excellent work on Covenants for Title (3d ed.), ch. 9 ; and perhaps the most succinct statement of the doctrine is to be found in the very clear and lucid opinion of Mr. Justice Nelson, in Van Rensselaer *v.* Kearney, 11 How. 297. "It is a doctrine, therefore," said he, "when properly understood and applied, that concludes the truth in order to prevent fraud and falsehood, and imposes silence on a party only where, in conscience and honesty, he should not be allowed to speak."

Now, in the present case, in searching for encumbrances or conveyances, the search against Calder would begin with his title from Chapman, and the search beyond would be against Chapman and those through whom he claimed ; and a search against Calder during the same period would be considered an utter absurdity. If the mortgage and the conveyance were ten years apart, the case would only be more glaring than the one presented to us.

In Uhler *v.* Hutchinson, 11 Harris 110, it was held that the holder of an unrecorded mortgage, or of a mortgage illegally recorded, by giving notice of its existence, at a sheriff's sale upon a judgment, cannot bind the estate mortgaged in the hands of a purchaser at such sale, where the judgment-creditor had no notice of the mortgage when his judgment was entered. In this case the mortgage had a defective acknowledgment. So, where the mortgage is made by an absolute conveyance with a deed of defeasance, and the defeasance is unrecorded, it is decided that it will be considered as an unrecorded mortgage ; and where the absolute deed and the defeasance were recorded in the same volume, on the same day, and though it did not expressly so appear most probably in *juxtaposition*, C. J. Gibson said, "The principle applicable to them is the same : a creditor in search of a clue to the title would necessarily stop at a conveyance absolute on the face of it, and referring to nothing beyond it, he would have no reason to suspect that further search would lead to a defeasance, of which, not lying in the channel of the title, he would not, *though actually recorded*, be bound to take notice." "If the record of the encumbrance lay not in the creditor's way, he was not bound to notice it:" McLanahan *v.* Reeside, 9 Watts 510, 511. And, in Luch's Appeal, 8 Wright 519, it was held that mortgages must be recorded in mortgage-

books, and are not properly recorded in any other species of books, where they cannot be found by means of the mortgage-index. In that case the mortgage was recorded in the Book of Miscellanies in Northampton county, and it was held to be an unrecorded mortgage.

These decisions rule this case, and there is no hardship on the mortgagees; for an examination of the title when they took the mortgage must have shown them Calder had no title to the "Factory Lot"; an innocent creditor should not suffer for their gross negligence.

Judgment affirmed.