## Gallagher *v.* Stern.

*Mortgages—Judgments—Priority of lien—Distribution of proceeds of sheriff's sale—Subrogation—Equity.*

1. Where the owner of an undivided moiety of real estate executed to a bank a mortgage covering in its description the entire interest in real estate, and the mortgagor subsequently acquired by purchase the moiety which he did not own when the mortgage was executed, and judgments are subsequently entered against the mortgagor, such judgments have priority of lien over the mortgage as to the subsequently acquired moiety, and in a distribution of the proceeds of a sheriff's sale of the entire property they will be given a preference over the mortgage as to one-half of the fund.

2. If A has a lien on two different pieces of ground followed by B's lien on one of them, followed by C's lien on both pieces, and on a sale of the property there is not sufficient money realized to pay off C's claim in full, C cannot insist that A's claim should be paid out of the entire piece of property on which B had his sole lien, thereby preventing B from participating in the distribution of the proceeds of sale.

Argued Oct. 15, 1914.  Appeal, No. 76, Oct. T., 1914, by The American Bank, from order of C. P. No. 3, Phila. Co., Sept. T., 1912, No. 5,090, dismissing exceptions to auditor's report in case of Nellie Gallagher v.

Bernard Stern. Before Rice, P. J., Orlady, Head, Kephart and Trexler, JJ. Affirmed.

Exceptions to report of Horace Haverstick, Esq., auditor.

From the record it appeared that the auditor was appointed to distribute a fund realized by the sale of properties 409 South Seventh street and the Northeast corner of Fifth and Pine streets in the city of Philadelphia. Incumbrances upon the properties were liens for taxes, several mortgages and a large number of judgments and mechanics' liens. The first three mortgages were described by the auditor as follows:

"Mortgage—Frederick D. Langenheim, for $2,500, dated June 21, 1909, recorded June 28, 1909, in Mortgage Book W. S. V. No. 1,587, page 552, made by Bernard Stern of inter alia No. 409 South Seventh street, and of the entire property northeast corner of Fifth and Pine streets, although at that date Stern was seized only of an undivided moiety thereof.

"Mortgage—Elizabeth D. Wetherill, for $1,200, dated July 16, 1909, recorded July 23, 1909, in Mortgage Book W. S. V. No. 1,669, page 253, made by Bernard Stern and Jacob Stern of property northeast corner Fifth and Pine streets, who at time held the property as tenants in common.

"Mortgage—American Bank, for $3,000, dated November 4, 1909, recorded November 8, 1909, in Mortgage Book W. S. V. No. 1,773, page 61, made by Bernard Stern, of No. 409 South Seventh street, entire property northeast corner Fifth and Pine streets and others. At that time Stern was seized of only an undivided moiety of the Fifth and Pine streets property."

Certain other mortgages and the judgments and mechanics' liens were subsequent in date. At the time the three mortgages were given, the Fifth and Pine street property was owned with undivided moieties by Bernard Stern and his son Jacob Stern. On June 26,

1911, the son's interest was sold to Bernard Stern. The sum of $10,600 was realized for the Fifth and Pine street property and the sum of $1,850 for the Seventh street property.

The auditor awarded to Frederick D. Langenheim the sum of $2,500 out of one-half of the proceeds of the Fifth and Pine street houses, and out of same half $1,200 to Elizabeth D. Wetherill. The balance of the proceeds out of this half was awarded to the American Bank. The portion of the fund arising from sale of the second half and from the sale of the Seventh street property was awarded amongst various judgment and mechanic lien creditors. The American bank filed exceptions to the report of the auditor.

*Errors assigned* were in dismissing exceptions to the report of the auditor.

*G. Von Phul Jones*, with him *Harry M. Miller*, for appellant.—The mortgage bank had a lien on the funds raised by the sale of the moiety of the property acquired by the mortgagor subsequent to the date of the mortgage.

Admitting that the auditor is correct in finding that the Langenheim and the American Bank mortgages had no lien on the funds of the second moiety, it was then his duty to marshal the assets in accordance with the well-established equitable rule that where prior incumbrancers have a lien on two funds, a subsequent incumbrancer may require the payment of the prior incumbrances out of those funds on which the subsequent incumbrancer has no lien. If this well-established rule had been applied in this case, then the Wetherill mortgage, having a lien on both funds, would have been paid out of the funds of the moiety second acquired, leaving one-half of the fund representing the moiety first acquired to be applied to the payment of the Langenheim and American Bank mortgages in their.

order.   That such a rule of distribution is well established in this state, will be seen by the following cases: Ziegler v. Long, 2 Watts, 205; Bruner's App., 7 W. & S. 269; Kendig v. Landis, 135 Pa. 612; Graff's Assigned Est., 139 Pa. 69; Robeson's App., 117 Pa. 628.

The appellee contends that since the judgment which he holds was obtained at a time when he had no notice that the bank's mortgage covered the second acquired moiety, his judgment has priority over the mortgage of the bank and cites in support of this contention the cases of Calder v. Chapman, 52 Pa. 359, and Uhler v. Hutchinson, 23 Pa. 110.

In the Calder case and the case of Uhler v. Hutchinson, the title had actually passed to the purchaser at sheriff's sale under the judgment, and as such purchaser he was protected, and not because he was a judgment creditor: Roger v. Gibson, 4 Yates, 111; Valentine v. Fell, 1 Chester Co. 332; Cadbury v. Duval, 5 Clark, 206; Lowey v. Elbert, 7 Del. Co. 24; Reed's App., 13 Pa. 475; Sill v. Swackhamer, 103 Pa. 7.

*George P. Rich,* for appellee.

OPINION BY KEPHART, J., February 24, 1915:

This appeal is from the confirmation in the court below of an auditor's report distributing funds in the hands of the sheriff arising from the sale of certain real estate.   The facts necessary to decide the questions presented may be summarized as follows: Bernard Stern and his son, Jacob Stern, were the owners of a certain piece of real estate situate on the corner of Fifth and Pine streets, Philadelphia, each owning an undivided one-half interest.   Bernard Stern, on November 4, 1909, executed to the American Bank a mortgage covering the entire property, though he owned but a moiety of it. On June 26, 1911, the son's interest was sold to Bernard Stern investing him with the entire ownership.   After this purchase, judgments were entered against him, this

appellee being one of the judgment creditors. On December 2, 1912, the entire property was sold by the sheriff, and the fund realized was not sufficient to pay all of the record indebtedness of Bernard Stern. The bank contends that inasmuch as its mortgage covered the entire property, the acquisition of the son's undivided one-half interest inured to the benefit of the mortgagee, and placed that interest under and subject to the lien of the mortgage as of the date the title passed. The appellee claims that the proposition as contended for by the bank is only true as between the mortgagor and mortgagee, but it is not true as between the mortgagee and lien creditors who had entered their liens subsequent to the sale of the son's interest. The sheriff's sale of this property having been made on a later judgment, which had an undoubted lien against the entire property, the auditor proceeded to divide the sum realized in equal parts, alloting one part to those liens which affected the one-half interest as owned by Bernard Stern before he purchased his son's interest. From this scheme of distribution the American Bank's mortgage, being on this list of liens, received but a part of the amount due. The other half of the sum realized from the sale was distributed by the auditor among the creditors whose liens were after the purchase of the son's one-half interest. This money did not pay all these liens in full.

When the mortgagor acquired the outstanding interest, this interest was included within the terms of the mortgage and was effective as between the mortgagor and mortgagee on the principle of estoppel. It was the duty of the mortgagee, as to other persons dealing with the mortgagor on the strength of this recently acquired interest, to give notice in some manner that he held the land under the lien of his mortgage. An intending purchaser or creditor in his examination of the record would find a deed from the son by the sheriff to Bernard Stern. His further examination of this title would be through

the son and the son's grantor. Bernard Stern, beyond this, was a stranger to this title. The record, from the time the appellant entered his lien up to the date the son's title passed, would not reveal this pre-existing mortgage made some time before in favor of the bank. In a search for liens against Bernard Stern affecting this interest, the title examiner would stop at the time the son's title passed. We need not prolong this discussion as the question is clearly decided in Calder (Marshalls) v. Chapman, 52 Pa. 359. In that case Calder was. the owner of a thirty-acre tract of land, with the exception of a certain part thereof called the factory lot. Calder mortgaged the whole tract, describing it by metes and bounds, including the factory lot, to which he did not have title. Subsequent to this mortgage, Calder acquired, by deed, this factory lot from Chapman. At a later date a judgment was recovered against Calder, under which the factory lot was sold by the sheriff to one Chapman. Afterwards the mortgagees foreclosed on their mortgage, the sheriff selling to them the entire thirty-acre tract of land, including the factory lot. Upon ejectment the court says: "The question is, by these sales who became the owner of the 'factory lot'? . . . Now, in the present case, in searching for incumbrances or conveyances, the search against Calder would begin with his title from Chapman, and the search beyond would be against Chapman and those through whom he claimed; and a search against Calder during the same period would be considered an utter absurdity. If the mortgage and the conveyance were ten years apart, the case would only be more glaring than the one presented to us. . . . There is no hardship on the mortgagees; for an examination of the title when they took the mortgage must have shown them Calder had no title to the 'factory lot'; an innocent creditor should not suffer for their gross negligence." See Uhler v. Hutchinson, 23 Pa. 110. This reasoning applies to the present case. Had the bank examined this title it would have dis-

covered that Bernard Stern, when he made a mortgage, owned only a half interest. The fact that the question involves the interest of a tenant in common, instead of one owning the entire piece of ground, does not affect the principle involved. The intending creditor may be satisfied with that much of the interest, and safely assume that inasmuch as there were no incumbrances against it to affect his proposed lien, he had ample security for his claim.

The facts involved in the second question may be summarized, in addition to those already noted, as follows: Preceding the lien of the American Bank on this undivided one-half interest of Bernard Stern, there was a mortgage given to Mrs. Wetherill for $1,335. This mortgage was executed by Jacob Stern, the son, and Bernard Stern, while the title for the one-half interest remained in each of them respectively. The Jacob Stern interest was sold by the sheriff to Bernard Stern. We do not have before us the fund derived from that sale or the position of record of the lien creditors of Jacob Stern, and therefore we are unable to say whether or not this sale divested the lien of the Wetherill mortgage as to Jacob Stern's interest. The mortgage executed by Jacob Stern and Bernard Stern was presented to the auditor for full payment. From this we may conclude that the amount realized from the sale of Jacob Stern's interest did not reach this mortgage if it was divested. The amount named in the mortgage covered the entire property. If one of the interests was sold and the mortgage was to be divested as to that interest, or a payment was to be made on the mortgage, the mortgagee would be entitled to payment from the fund realized or paid on account of that interest. A mortgage executed by tenants in common is not an indebtedness separate to each tenant in common, divided as their ownerships of the land bear to the amount named in the mortgage, but as to the mortgagee, it covers all the land or any interest thereof that might be sold. The rights of the

owners or others affected are worked out through the equity of subrogation. So, in the present case, Mrs. Wetherill was entitled to be paid the full amount of her mortgage from the fund realized from the sale of the one-half interest of Bernard Stern, not by virtue of the purchase by Stern of the son's interest later on but because her mortgage was executed by all the tenants in common and covered the entire property or any interest thereof sold. If the rights of any persons are affected by reason of this distribution, and the mortgage is still a lien on the one-half interest of Jacob Stern, they can be subrogated to whatever rights the mortgagee would have as against this one-half interest. As we said before there is nothing of record to show the state of this lien that would enable an auditor making distribution to give effect to this equity of subrogation. Regarding this particular claim, the court below did not err in allowing to Mrs. Wetherill the full amount of her mortgage, nor did it err in the scheme of distribution applied to this fund. The Langenheim mortgage, similar to the bank mortgage, was a lien on the one-half interest of Bernard Stern, but unfortunately for the appellant its lien preceded that of the bank and therefore was entitled to be paid in full. The position taken that this mortgage should have been paid out of the funds realized from the sale of the Fifth and Pine streets property exclusively and the money realized from the sale of another property upon which it was a lien should be left for the bank, is without merit. The position of the liens of record did not entitle the bank to make this claim and as the Langenheim mortgage was a lien upon the Fifth and Pine streets property as well as the other property, Mrs. Wetherill, the next creditor to Langenheim, had a right to insist that the funds derived from the sale of the other properties be applied as the Langenheim mortgage called for. The sum realized from the sale of these other properties was less than one-half of the amount of the Langenheim mortgage. It is a new

proposition that if A has a lien on two different pieces of ground, followed by B's lien on one of them, followed by C's lien on both these pieces of ground, that in a sale of a property where there was not sufficient money realized to pay off C's claim in full, that C could insist that A's claim should be paid out of the entire piece of property on which B had his sole lien, thereby preventing B from participating in the distribution of the proceeds of sale. This is what the appellant asks in this assignment of error.

The conclusions as thus reached make it unnecessary to pass upon the question as to whether the American Bank had authority to take a mortgage to secure future advances, which advances were not obligatory on the bank. If this were decided affirmatively and the amount of the bank's mortgage would thereby be increased, it would not increase the amount of money that the bank would receive from the fund in the hands of the sheriff as it has been exhausted in the distribution here provided. We do not wish to be understood as affirming the position taken by the court below with relation to the power of the bank to accept the mortgage for future advances. A decision on that question was not necessary in this adjudication then before it.

All of the assignments of error are overruled and the decree of the court below is affirmed at the cost of the appellant.