Calhoun et al., Appellants, *v.* Hays et al.

Argued April 28, 1944. Before KELLER, P. J., BALD-RIGE, HIRT, KENWORTHEY, RENO and JAMES, JJ. (RHODES, J. absent).

*M. M. Edmundson,* for appellants.

*H. A. Robinson,* with him *Ralph L. Smith,* for appellees.

OPINION BY KELLER, P. J., September 27, 1944:

This was an action of ejectment tried in the court below without a jury, under the Act of April 22, 1874, P. L. 109, as amended by the Act of July 10, 1935, P. L. 640.

The facts, as found by the court—and they are sustained by the evidence—may be summarized as follows:

(1) David K. Calhoun, the common source of title of both parties, by deed from Robert Hays, dated July 17, 1867 and duly recorded, acquired title, inter alia, to the one-half acre of land involved in this action.

(2) By deed dated July 25, 1882 and duly recorded, David K. Calhoun and wife granted and conveyed this half-acre lot to the Board of School Directors of Mifflin Township, its successors in office and assigns, "to be used for the establishment and maintenance of the common schools of said district only and for no other purpose or purposes whatever, said lot to revert to the grantors, their heirs and assigns, as soon as said parties of the second part or their successors in office cease to use it for said purpose." [1]

(3) The said David K. Calhoun by various deeds dated respectively April 17, 1891, May 21, 1891, December 15, 1891 and January 3, 1893, and duly recorded, granted and conveyed to W. Seward B. Hays, in fee, the land and acreage immediately surrounding the said 'school lot.'

(4) Under date of March 19, 1895 David K. Calhoun and his wife, being unable to convey said school lot by reason of their prior deed, entered into an agreement under seal with the said W. Seward B. Hays, which recited the above mentioned deed to the School District of Mifflin Township and the provision that the therein described real estate should revert to the said David K. Calhoun and wife whenever the property should cease to be used for school purposes, the school building to become their property, but subject to the payment of a sum of money to be agreed upon by arbitrators [see note 1], and further recited, "Whereas said

---

[1] The parties of the first part agreed in said deed to purchase the building or buildings which might be on said lot at such time as it ceased to be used for said purpose and pay such a price as three disinterested parties outside of the limits of Mifflin Township should value them at or adjudge them to be worth.

authorities of the school district of Mifflin Township are about to discontinue the use of said described property for school purposes"; and it was then covenanted and agreed: First: That the said David K. Calhoun and Alice P. Calhoun, his wife, will grant and convey unto said W. Seward B. Hays by good and sufficient deed, all the foregoing described real estate, free of encumbrances, whenever they may be requested to do it—provided, however, they shall not be required to make and execute such conveyance until such time as the aforesaid Mifflin Township school district shall discontinue the use of said property for school purposes —the consideration for said conveyance to be the sum of three hundred dollars to them paid. Second: The said W. Seward B. Hays, the second party, covenants and agrees to pay the said first parties the sum of three hundred dollars upon the execution and delivery of the aforesaid deed.

The agreement also contained the following receipt duly signed by D. K. Calhoun and Alice P. Calhoun:

"Received the day of the date of the above indenture of the above named W. Seward B. Hays the sum of three hundred dollars ($300) being the consideration money in full when a good and sufficient deed is made, sealed and delivered to the party of the second part."

An inspection of the original paper shows that the receipt was signed by the same persons who executed the agreement as first parties.

The agreement was acknowledged on June 7, 1895, with a separate married woman's acknowledgment, and was duly recorded on June 13, 1895.

(5) The said David K. Calhoun died April 6, 1904 and the plaintiffs claim title to said 'school lot' as his *devisees*. The said W. Seward B. Hays died October 13, 1924 and the defendants claim an equitable title to said lot as his devisees.

(6) Subsequent to the execution of said agreement

of March 19, 1895 the said W. Seward B. Hays, and, after his death, the defendants, used in their business of buying and selling coal and builders' supplies such portions of said school lot as were not in the actual use of the school board for school purposes.

(7) Upon the organization of the Borough of West Homestead, the school district of said borough succeeded to the rights of the school district of Mifflin Township under said above recited deed—see finding (2) above.

(8) By resolution dated September 3, 1941, and adopted in accordance with the Act of May 18, 1911, P. L. 309, Art. VI, sec. 603, the said school district of the Borough of West Homestead formally abandoned said school lot for school purposes.

(9) That in pursuance of said resolution and in reliance upon the executory contract of sale made by the said David K. Calhoun with the said W. Seward B. Hays, said school district of West Homestead Borough by quit-claim deed, dated September 6, 1941 and duly recorded, quit-claimed all its interest in said lot to the defendants herein.

(10) That in reliance upon said executory contract and the quit-claim deed of the school district, the defendants entered into possession of said 'school lot' and erected a building thereon for use in their business.

(11) At or about the same time the defendants requested a deed from the plaintiffs for the legal title to said lot and offered to pay to the plaintiffs the sum of $300 in accordance with the terms of said executory contract of sale, but the plaintiffs refused to execute and deliver such deed and refused to receive the consideration therefor, and filed this action in ejectment for the possession of said 'school lot.'

While not specifically found as a distinct finding of fact, the court in its discussion stated that the school district continued to hold said lot for school purposes

and did not formally give up possession until 1941, although the property ceased to be used for common school purposes in February, 1927. That it exercised ownership over the lot until it formally abandoned the same pursuant to section 603 of the School Code (Act of May 18, 1911, P. L. 309) is seen from the testimony of *plaintiffs'* witness, Rev. J. B. Westley, pastor of the First Baptist Church of West Homestead, to the effect that *by permission of the School Board* his church occupied the school building on the lot for church purposes on September 26, 1931 and thereafter, until the school board *abandoned* the lot. Under the law, as declared in the above section of the School Code, no land acquired by or conveyed to any school district for school purposes shall be considered as abandoned until the board of school directors shall pass by a vote of the majority of its members a resolution declaring it to be the intention of such district to vacate and abandon the same, whereupon all right, title and interest of such district in such premises shall be fully terminated. Accordingly the interest of said school district in said lot did not cease until its resolution of September 3, 1941 was adopted.

The court held that the agreement of March 19, 1895 was not an option, but an executory contract of sale; that under it the said W. Seward B. Hays acquired an equitable title and right of possession to said lot, which passed to the defendants as devisees under his will.

In the court's clear and comprehensive discussion it laid down, inter alia, the following principles, citing the authorities supporting them:

A possibility of reverter is any reversionary interest which is subject to a condition precedent. Restatement —Property, sec. 154 (3).

The owner of any reversionary interest in land has the power by an otherwise effective conveyance inter vivos, to transfer his interest or any part thereof: Restatement—Property, sec. 159(1).

Where an estate is conveyed in fee for a specified purpose, "and no other," the fee is a base fee determinable upon the cessation of the use of the property for that purpose. The possibility of reverter is capable of transmission to his grantees and will pass to them under a conveyance of the reversion: *Slegel v. Lauer,* 148 Pa. 236, 23 A. 996.

Where a person conveys to a religious society, with reversion to his heirs upon the grantee ceasing to use the property for religious purposes, upon the happening of such event *the reversion passes to the grantor's heirs at law and not to the devisees under his will:* *Hanby v. Bailey,* 51 Pa. Superior Ct. 244.

Such reversion, however, passes to the heirs subject to an agreement of sale made by the grantor: *Vincent v. Huff,* 8 S. & R. 381.

The estate of the vendee under an agreement of sale descends to his heirs or may be aliened (devised) or encumbered: *Rose v. Jessup,* 19 Pa. 280.

Such an estate "is a freehold, absolute in possession, owned in severalty, descendible to his heirs, and may be aliened or encumbered": *Anania v. Serenta,* 275 Pa. 474, 477, 119 A. 554. See also, *Spratt v. Greenfield,* 279 Pa. 437, 124 A. 126; *Demmy's App.,* 43 Pa. 155, 168; *Hess v. Vinton Colliery Co.,* 255 Pa. 78, 84, 99 A. 218.

Under the deed described in the second finding of fact, the Board of School Directors of Mifflin Township acquired a base or qualified fee to the land in question, title to the same to revert to the grantors, David K. Calhoun and wife, *their heirs or assigns,* whenever the lot of ground so granted and conveyed ceased to be used for common school purposes.

This reversionary interest, or possibility of reverter, was subject to alienation by the grantors, and on March 19, 1895, they contracted and agreed under seal to grant and convey the said real estate to W. Seward B. Hays, and the latter covenanted and agreed to pay the

Calhouns $300; conveyance not to be required until the said school district discontinued the use of said property for school purposes, the consideration money to be paid upon the execution and delivery of said deed of conveyance. This passed to Hays an equitable interest in said reversionary interest.

On Calhoun's death before the land ceased to be used for school purposes, the *legal* title to his reversionary interest in said land passed to his heirs at law—not his devisees—subject to the *equitable* title of Hays, assignee of David K. Calhoun and wife, under the executory contract of sale beforementioned.

While in deeds of conveyance, prior to the Act of April 1, 1909, P. L. 91, the word, heirs, was a term of art, and indispensable to carry a fee, yet in an executory contract to convey, the absence of the word will not prevent a passing of the fee: *Phillips v. Swank,* 120 Pa. 76, 13 A. 712; *Defraunce v. Brooks,* 8 W. & S. 67; *Ogden v. Brown,* 33 Pa. 247; *Gaule v. Bilyeau,* 25 Pa. 521; *Hall v. Clearfield, &c. Ry. Co.,* 168 Pa. 64, 31 A. 940; *Fritz v. Menges,* 179 Pa. 122, 36 A. 213.

The agreement in this case is an executory contract. The Calhouns agreed to convey the real estate in question when it was no longer used for school purposes, the vendee to pay the sum of $300 on the date of delivery of the deed.[2] No words of inheritance are used

---

[2] The receipt in the agreement signed by the Calhouns shows a payment to them by Hays of the consideration money, $300, before the acknowledgment of the agreement by the Calhouns on June 7, 1895. The defendants might have rested on this, and demanded a conveyance of the real estate on the formal abandonment of the premises by the School District, without additional payment, but as payment of the consideration in a deed or agreement is open to question, and the transaction occurred years before, and all the parties to it are now dead, the defendants, apparently, elected not to rely on the payment as set forth in said receipt and offered to pay plaintiffs $300 on receipt of the conveyance called for by said contract. No harm was done the plaintiffs by this course.

in the agreement, but the intent to convey the fee is apparent not only from the language of the instrument, but from the fact that prior to the date of this agreement, Calhoun had conveyed to Hays, in fee, the acreage completely surrounding the school property. The intent to convey the school lot in fee to Hays and his heirs, if and when it reverted to Calhoun, his heirs or assigns, logically follows.

A formal tender of the consideration was unnecessary in this case. The defendants requested a deed in accordance with the agreement and offered to pay the consideration. The plaintiffs refused to give a deed and brought an action of ejectment for the lot. The defendants by their answer bring the consideration money into court. All the defendant in such a case has to do is to be ready and willing to perform his part of the agreement of sale: *Allen v. Woods*, 24 Pa. 76; *Thompson v. McKinley's Admr.*, 47 Pa. 353.

The defendants properly pleaded their equitable title under the agreement of sale: *Dutton's Est.*, 208 Pa. 350, 57 A. 719. The action thereupon became one in equity. If the plaintiff holds the legal title, he cannot bring an equitable action in ejectment. But if the plaintiff begins an action on his legal title and the defendant sets up a contract of sale as a defense, the action becomes an equitable one: 13 Standard Pennsylvania Practice, p. 385, sec. 44, pp. 421, 422; *Young v. Penna. M. & S. R. R. Co.*, 48 Pa. Superior Ct. 49.

A conditional verdict is necessary: 13 Standard Pennsylvania Practice, p. 505; *Young v. Penna. M. & S. R. R. Co.*, supra, p. 51.

The court may order the money paid into court to await the making of a proper deed.

The defendants in this case bring the consideration money into court and are entitled to a deed.

The court's conclusions of law—thirteen in number —were brief statements of legal conclusions in conson-

ance with the principles enunciated in its discussion, and, in accordance therewith it rendered its decision in favor of the defendants and against the plaintiffs, conditioned on the payment into court by the defendants of the sum of $300 within fifteen days after the entry of judgment on said decision, said sum being the consideration named in said agreement of sale, and to be paid to plaintiffs; and if said defendants fail to pay into court said sum of $300 within fifteen days after the entry of judgment as aforesaid, then judgment to be entered in favor of the plaintiffs.

Exceptions to the third, fourth and sixth findings of fact, to the fourth, fifth, seventh, and ninth to thirteenth conclusions of law, and to the decision of the court, were filed by the plaintiffs, which were dismissed by the court in banc, in an opinion by the trial judge, and judgment was entered in accordance with the decision previously filed. Plaintiffs appealed.

Nothing can profitably be added to the discussion and decision of the case by the trial court.

The evidence in the case sustains the court's findings of fact. The findings of fact support the court's conclusions of law. And the decision and judgment thereon are in accord with and warranted by the findings of fact and conclusions of law.

The judgment is affirmed.