London, Appellant, *v.* Kingsley.

Argued April 17, 1951. Before STERN, STEARNE, JONES, BELL, LADNER and CHIDSEY, JJ.

*Paul R. Selecky,* with him *Leo G. Knoll,* for appellants.

*J. Julius Levy,* with him *M. J. Martin* and *James W. Scanlon,* for appellee.

OPINION BY MR. JUSTICE BELL, June 27, 1951:

Plaintiffs, heirs of Isaac London, brought an action of ejectment to establish their title to 132 acres of coal lands in Lackawanna County. *Defendant is the heir of Burr Kenyon.* Plaintiffs aver that Isaac London, on October 1, *1828,* leased certain coal land, approximately 230 acres, to Thomas Meredith for a period of *100 years,* and attached a copy of the lease. The lease gave Meredith the right to find, dig, remove and sell coal. The complaint also averred that Isaac London, who was the common source of title to both the surface and the underlying coal, severed the title to the coal from the title to the surface; that *the possibility of reverter in the coal lands was never released to Meredith;* and that by operation of law, *title to the coal lands* which remained after October 1, 1928, *was revested in the heirs of Isaac London* surviving him on October 1, *1928.*

Plaintiffs further averred that by deed dated *February 14, 1840,* Isaac London conveyed the surface of the above mentioned premises to Burr Kenyon but the conveyance specifically excepted the coal granted to Meredith. A copy of the deed to Kenyon was attached to and made part of the complaint. *This deed is the touchstone of the case* and will hereinafter be referred to at length.

After the expiration of the 100 year lease, large quantities of coal still remained unmined by the Hillside Coal and Iron Company, which was the lessee of Thomas Meredith. Plaintiffs alleged that defendant unlawfully entered upon said premises *after October 1,*

*1928,* and is engaged in conducting a gigantic stripping operation for the removal of the coal. Plaintiffs then averred their right of possession and title, attached to the complaint an abstract of title upon which they claimed, and prayed for an accounting, and for damages for waste.

After preliminary objections filed by defendant had been dismissed, defendant filed an answer in which he pleaded, inter alia, that he acquired title *by deed of Isaac London to Burr Kenyon dated February 14, 1840,* and that his title had already been confirmed by the Supreme Court of Pennsylvania in *Smith v. Kingsley,* 331 Pa. 10, 200 A. 11. Defendant also pleaded affirmative defenses under new matter to which plaintiffs filed a reply. *The defendant filed a motion for judgment on the pleadings* under Rule 1034 of the P. R. C. P. The court held that defendant had title and right of possession and entered judgment in favor of the defendant. From this judgment plaintiffs have taken this appeal.

*A. motion for judgment on the pleadings is in effect a demurrer* and in considering the same the Court should be guided by the same principles as were heretofore applicable in disposing of a preliminary objection in the nature of a demurrer. On such a motion the Court must accept as true—even though denied—averments of fact by the opposing party which are material and relevant; but inferences and conclusions which are drawn from and erroneously interpret a written instrument which is part of the record are not admitted, nor are conclusions of law. Judgment on the pleadings should be entered only where the right is clear and free from doubt: *Waldman v. Shoemaker,* 367 Pa. 587, 80 A. 2d 776; *Kittaning Coal Co. v. Moore,* 362 Pa. 128, 132, 66 A. 2d 273.

We agree with the statement in the very able opinion of Judge ROBINSON (speaking for the lower court) :

112

"*Basically, the controversy turns on the legal effect of the conveyance of February 14, 1840,*[*] by Isaac London and wife *to Burr Kenyon.* Plaintiffs contend that after the lease to Meredith *in 1828,* London's only interest in the coal was a *possibility of reverter;* that *'Isaac London could not alienate it in any way'* except by a *release* to Meredith or his assigns; and that the conveyance to Kenyon in 1840 in so far as it purported to transfer London's possibility of reverter in the coal after the termination of the Meredith estate, was invalid and void."

*The deed of Isaac London and wife to Burr Kenyon dated February 14, 1840,* conveyed to Kenyon, his heirs and assigns, all that certain parcel of land situate and bounded as therein particularly described, containing 122 acres; "Excepting and reserve of coal to Thomas Meredith, being part of tract of land surveyed to Edward London, deceased, the title of which became the property of the first part by the heirship of Edward London. *Together with* all and singular the houses, outhouses, edifices, and building thereon erected and being and all ways, waters, water-courses, woods, fences, gardens, *mines, minerals,* rights, liberties, privileges, hereditaments and thereunto belonging in or in any wise appertaining, *and the reversions* and remainders, rents, issues and profits thereof *and also all the estate, right, title, interest,* use, trust, property, possession, *claim and demand whatsoever of the said party of the first part in law or equity* or otherwise howsoever of in to or put of the same *and every part and parcel thereof pertaining to Isaac London* and Sally, his wife, the party of the first part to Burr Kenyon, the party of the second part". *There then followed a general warranty by the grantor for himself, his heirs,* executors and administrators.

---

* Italics throughout, ours.

Plaintiffs' first contention is that London had severed his land into two parcels—surface and coal; that he had leased or sold the coal to Meredith for 100 years; *that he had nothing left except the surface,* and that *it was the surface land which he conveyed to Kenyon in 1840,* together with the mines and minerals, and the reversions and remainders *appertaining to the surface;* and *there was no* conveyance nor even an *intention or attempt to convey* London's possibility of reverter in the coal.

It should be noted at the outset that *London did not specifically divide his land into surface and coal; nor did he specifically convey, in the deed to Kenyon, merely the surface;* nor indeed did he ever specifically reserve or specifically convey a possibility of reverter in the coal land. London conveyed 122 acres of land situate and bounded as described in the deed, excepting and reserving thereout the coal to Meredith. *In 1840 London owned not only the surface, but also a reversionary interest in whatever coal remained after the expiration of the 100 year lease to Meredith.* Since the plaintiffs contend that it was never the intention of London in and by the deed to Meredith to consider or convey the possibility of reverter in the coal land, it may not be amiss to ask *what mines and minerals London was referring to on the surface land* which plaintiffs allege he was solely conveying; and what were the reversions and remainders which plaintiffs allege London was reserving *on the surface land only;* and what is the meaning of the broad language of the deed "and also all the estate, right, title, interest, . . . claim and demand whatsoever of the said party of the first part in law or equity or otherwise howsoever . . . pertaining to London"? So far as the record shows there were no mines, minerals or reversions on or in or appertaining to the surface, and unless the mines and minerals and the reversions and remainders ap-

plied to London's reversionary interest in the coal lands leased to Meredith, the language would be meaningless; and it is difficult to conceive of any broader language than that used in the deed *to convey all* of London's estate, *right, title, interest, claim, and demand in law or equity* which he and his wife had in the land *and in every part and parcel thereof*.

A reading of the deed of *1840* clearly indicates that the grantor *intended* to convey to Kenyon every right and interest he had in the world with respect to the property situate and bounded as therein described. This is confirmed by the opinion of this Court in *Smith v. Kingsley, 313* Pa. 574, 170 A. 138. In that case a bill in equity was brought by heirs of Susan London Dolph (sister of Isaac London) against this defendant for an accounting of coal mined in Lackawanna County *from this specific coal land* which had been leased by Isaac London to Thomas Meredith in 1828. The facts and the ruling of the Court are so clearly and aptly set forth by Mr. Justice, now Chief Justice, DREW, that we shall quote therefrom: "These writings were construed, in Kingsley v. Hillside Coal & Iron Co., 144 Pa. 613, to amount to 'a sale of the coal to be mined within the term stated therein.' Meredith took possession, and by himself and his assignees mined the coal in large quantities until 1928, when the hundred-year term expired. The defendants then took possession and began mining and removing coal, claiming under a deed of the land *executed in 1840 by Isaac London to Burr Kenyon,* under which Kenyon and defendants, his successors in interest, have held possession of the surface ever since its execution. *This deed covered not only the surface but the 'mines, minerals, reversions and remainders,' with the exception of the interest of Meredith in the coal.*"

The Court held that the rights of Susan Dolph were lost and barred by the statute of limitations as a re-

sult of the lease of 1828 executed by Isaac London to Thomas Meredith and by the deed of 1840 from Isaac London to Burr Kenyon (the exact lease and deed which are involved in the present case). The bill was dismissed because a bill for an account cannot be maintained by one who claims to be a tenant in common but who is out of possession and has not established his title at law.

Plaintiffs accurately state that the Court's interpretation of the deed of 1840 to Kenyon was dicta, but it was sound dicta, and it so clearly and well expresses the language and effect of the deed that we adopt and reiterate it here: *"This deed covered not only the surface but the 'mines, minerals, reversions and remainders,' with the exception of the interest of Meredith in the coal."*

It still remains to consider another point in plaintiffs' highly technical, but finely spun legal argument which they so ably advanced, namely, *London had no reversionary or remainder interest in the coal lands, but merely a possibility of reverter; and under and by virtue of the common law and by a footnote in one Pennsylvania case, a possibility of reverter cannot be conveyed, but can only be released.*

While the authorities are not in accord, the better view seems to be that at common law a possibility of reverter—which was not an estate in land, present or future, but a mere possibility that a right, or an estate in land, might arise in the future upon the happening of a contingency—*was not the subject of a grant, devise or assignment, but was capable of being released:* Cf. Gray, The Rule Against Perpetuities, (4th Ed.) §§13, 14; 4 Kent's Com. 122, 123; 2 Washburn Real Property (6th Ed.) §1512, p. 497; 1 Simes, Future Interests, §§117 et seq.; Thompson, Real Property, Permanent Ed., §§2182, 2187; 2 Tiffany, Real Property (3rd Ed.) §314, p. 9; 33 Am. Jur. §206, p.

684; 21 C. J., Estates, §180; 31 C. J. S., Estates, §105b; *Nicoll v. N. Y. &c. R. Co.,* 12 N. Y. 121; *Atkins v. Gillespie,* 156 Tenn. 137, 299 S. W. 776; *Copenhaver v. Pendleton,* 155 Va. 463, 155 S. E. 802.

While the terms "possibility of reverter" and "reversion" have at times been used interchangeably and confusedly, the courts of Pennsylvania have held, for over 100 years, that a possibility of reverter, like any other reversionary interest, is capable of transmission by inheritance, conveyance or release: *Scheetz v. Fitzwater,* 5 Pa. 126, *Slegel v. Lauer,* 148 Pa. 236, 23 A. 996; *Calhoun v. Hays,* 155 Pa. Superior Ct. 519, 39 A. 2d 307; *Smith v. Kingsley,* 331 Pa. 10, 12, 200 A. 11. The law of Pennsylvania on this point has been adopted by the Restatement, Property (Future Interests) §159, p. 570.

The basic reason for these decisions was probably because our courts saw neither reason, logic nor necessity for continuing the doctrine of a feudal society in modern commercial and industrial times. Cf. 3 Simes, Future Interests, §715. The power to dispose of a possibility of reverter is in accord with sound public policy in the interest of modern civilization: Cf. Graves, Notes on Real Property, pages 392, 393.

In *Smith v. Kingsley, 331* Pa. 10, supra, ejectment was brought by the heirs of Susan London Dolph against the heirs of Burr Kenyon under a claim for a one-fourth undivided interest in these very same coal lands which Isaac London leased to Thomas Meredith. This Court, speaking through Mr. Justice MAXEY, after reciting this very deed of *February 14, 1840* from London to Kenyon, said (page 12) : *"This constituted a comprehensive conveyance of Isaac London's entire rights in the property, including any rights that might revert to him or his heirs upon the conclusion of the 1828 lease."* Having reference to plaintiffs' present contention that Isaac London severed and divided his land

into surface and coal land, Justice MAXEY further said (page 12) : ". . . in Greek Catholic Congregation of Olyphant Borough v. Wilson Coal Company, 329 Pa. 341, 198 A. 841 . . . this court said: . . . 'The *"severance" which took place when the Meredith lease was executed October 1, 1828, was not a complete severance for all future time. . . . It contemplated only a separation for the space of a century.'* " The Court held that the action of Isaac London in executing the Meredith lease of 1828 was a denial of the rights of his sister, Susan Dolph, and that 21 years later he acquired a title to all the coal lands by adverse possession.

In *Scheetz v. Fitzwater,* 5 Pa. 126, supra, the second paragraph of the syllabus aptly summarizes the facts and the law: "E. Conveyed to L. a mill-dam, or pond of water, with the site or soil of said pond, for the use and service of a mill, (on the land of L.) and for no other use whatever. In 1817, L.'s assignee drained the pond and cultivated the reclaimed land, with the tract on which the mill stood, as one farm. In 1833 his title to the mill tract, with its appurtenances, was sold by the sheriff: Held, L.'s title to the soil of the mill-pond was a base fee, determinable on disuser as a pond, when it revested in the assigns of E., *under a conveyance of the reversion.*"

In *Slegel v. Lauer,* 148 Pa. 236, supra, a bill in equity was brought for cancellation of a deed which was allegedly a cloud on plaintiff's title. Plaintiff's predecessor in title had in 1772 conveyed unto the Commissioners of Berks County and their successors a certain lot of ground particularly described therein adjoining a prison "to have and to hold . . . forever hereafter *unbuilt on in order to prevent any prisoner or prisoners making their escape* over the said prison wall by reason or means of any building to be erected contiguous to the same wall". In 1849 the property ceased to be used for the county jail and the prison was

moved to a new location. The Court granted the relief prayed for and affirmed on the learned opinion of Judge ENDLICH. The basis for his decision is found on pages 244-245 where he said: "But, where an estate is conveyed in fee for a specified purpose 'and no other,' the fee is a base fee determinable upon cessation of the use of the property for that purpose: Kirk v. King, 3 Pa. 436; Scheetz v. Fitzwater, 5 Id. 126. . . . Of course, upon the determination of a base fee, the property reverts to the grantor: 2 Blackst. Comm., pp. 109-110; without any claim or act on his part where it is determinable by limitation: Schaeffer v. Messersmith, supra. In the meanwhile, the estate is out of him, and *all that remains to him is the mere possibility of reverter*: 4 Kent, Comm., p. 10. *Yet this mere possibility is capable of transmission to his grantees and will pass to them under a conveyance of the reversion*: Scheetz v. Fitzwater, 5 Pa. 126."

In *Calhoun v. Hays,* 155 Pa. Superior Ct. 519, supra, plaintiff brought an action of ejectment. The defendant set up a contract of sale as a defense. The court held that a deed to the Board of School Directors conveyed a base or qualified fee and that title to the land would revert to the grantors, their heirs or assigns whenever the ground so conveyed ceased to be used for common school purposes. President Judge KELLER in his opinion said (page 525) : "Where an estate is conveyed in fee for a specified purpose, 'and no other,' the fee is a base fee determinable upon the cessation of the use of the property for that purpose. *The possibility of reverter is capable of transmission to his grantees and will pass to them under a conveyance of the reversion*: Slegel v. Lauer, 148 Pa. 236, 23 A. 996. . . .

"This reversionary interest, or *possibility of reverter,* was subject to alienation by the grantors, and on March 19, 1895, they contracted and agreed under

seal to grant and convey the said real estate to W. Seward B. Hays, and the latter covenanted and agreed to pay . . .".

That this has always been the law of Pennsylvania is apparent from Gray, The Rule Against Perpetuities, 4th Ed. §13. *"Possibilities of Reverter.* Some estates were terminable by special or collateral limitations; for instance, an estate to A. till B. returned from Rome; or an estate to A. and his heirs until they ceased to be tenants of the Manor of Dale. On the happening of the contingency, the feoffor was in of his old estate without entry. . . . After such a fee it has commonly been supposed that there could be no remainder; but there was a so-called possibility of reverter to the feoffor and his heirs which was not alienable.[3]"*

The only authority in Pennsylvania which directly or indirectly lends any support to plaintiffs' contention is contained in a footnote in *Smith v. Glen Alden Coal Company,* 347 Pa. 290, 32 A. 2d 227. The facts therein were very involved. It will suffice to say that according to the Court's opinion: "There are two basic questions in this case: First, was Miss Smith's one-fourth interest in her father's estate, under the ninth paragraph of his will, a life interest or an absolute interest? Second, if it was an absolute interest, was that interest in the coal, realty or personalty?" The Court held that Miss Smith had an absolute interest under the will and that ₊the interest in the lease requiring

---

* "3. . . . In Pennsylvania, where possibilities of reverter have been assumed to still exist, the Court seems also, in Scheetz v. Fitzwater, 5 Pa. 126, to have thought them assignable, and has so held in Slegel v. Lauer, 148 Pa. 236, 23 Atl. 996. . . . The rule stated in the text has been largely abrogated in the United States by statute or decision. See Amer. Law Inst., Restatement, Property, §§44, 159. In England, such interests (so far as they exist) are now alienable. See 8 & 9 Vict., c. 106, §6, and the Wills Act (1837)."

payments of royalties was personal property and salable by her as administratrix. The Court in its opinion said, inter alia, (p. 301-302) : "The lessor's interest in the lease is properly termed a possibility of reverter. . . . After the testator delivered this lease his only interest in the coal was a *possibility of reverter,*[*4] and this 'is not an estate, present or future, but merely a possibility of having a future estate' in that coal."

We do not consider that Chief Justice MAXEY, who wrote the opinion of the Court, decided or intended to decide by this explanatory footnote[*4] that the law of Pennsylvania prohibited the conveyance or devise of a possibility of reverter.

It is not necessary to decide whether an estoppel arises against Isaac London's heirs under the general warranty contained in his deed of 1840, although the law on this point would appear to be well settled: Cf. *Jordan v. Chambers,* 226 Pa. 573, 581, 75 A. 956; *Clark v. Martin,* 49 Pa. 299; *Calder v. Chapman,* 52 Pa. 359; *Supraner v. Citizens Savings Bank,* 303 Mass. 460; Ladner, Real Estate Conveyancing, (2nd Ed.), p. 231; 31 C. J. S., Estoppel, §30, p. 210.

For the reasons hereinabove set forth we hold that in Pennsylvania a reversion includes a possibility of reverter and that it may be, inter alia, inherited, sold and conveyed. We have carefully considered all of the contentions of the plaintiffs, but are convinced they merit no further discussion.

Judgment affirmed.

---

* "*4 'A possibility of reverter . . . could not be granted or devised, at common law, but the right of reverter might be released to the person holding the estate in fee upon which the possibility of the reverter depended; and such release might be made either by the creator of the estate in fee upon which the possibility of reverter depended, or, if he had died, by the person who at the time of the release answered the description of his heir . . .' "