## Gilliland v. Prudential Insurance Company of America

*David W. Ketler*, for plaintiff.

*Reed, Smith, Shaw & McClay* and *Fruit & Francis* and *David Goodwin*, for defendant.

MCKAY, J., November 6, 1957.—This case is before the court en banc upon a motion by defendant for judgment on the pleadings. The action is upon a policy of health insurance issued by defendant company under date of November 17, 1954. It covers plaintiff, his wife, Maria, his son, Larry C. and his daughter, Linda L. Gilliland.

The complaint alleges, in substance, that plaintiff's daughter Linda was confined to the Sharon General Hospital from December 13 to December 18, 1955, during which time a surgical operation was performed upon her for strabismus. It claims that as a result of this operation plaintiff became obligated to pay hospital and doctor bills amounting to $309, and that under defendant's policy plaintiff was entitled to receive from defendant $266.50 of that amount.

A copy of the policy is attached to the complaint. It provides that defendant "will pay to the Insurer the benefits stated in this Policy subject to all the provisions, conditions, limitations and exceptions contained herein, endorsed hereon, or attached hereto".

Under "Benefit Provisions" of the policy, the following definition of sickness appears: "Wherever used in this policy: 'Sickness' means only sickness or disease of the insured or any dependent *contracted and commencing 16 or more days after such person becomes covered under this policy.*"

The policy then lists under the "Benefit Provisions" the hospital confinement benefits, hospital expenses, and surgical expense benefits payable under the policy.

The application attached to the policy and signed by plaintiff contains two questions relating to the health of plaintiff and his dependents. One of these questions, item 37, reads: "Has the proposed insured or any other person to be covered ever been treated for or had any known identification that he or she had [listing several diseases] . . . (y) any other disease or disorder of . . . (7) eyes".

To this question the answer checked is "yes", and the explanation set forth under that answer is "37y7 Larry—eye operation—3 weeks (disability)—May 1952—Dr. R. S. Riddle, Sharon, Pa. (physician)".

Defendant filed an answer denying that Linda's operation was for strabismus and alleging that it was for esotropia and right hypertropia. It further alleged that plaintiff was not entitled to benefits because the sickness was not a sickness within the terms of the policy in that Linda contracted it or it commenced prior to 16 days after she was covered by the policy. Defendant further pleaded under new matter that plaintiff had made misrepresentations in his application for the policy in that in answering the question whether any persons to be covered ever had any known indication that he or she had any other disease or disorder of the eyes than those specified or impairments not recorded in the application, he failed to report the fact that Linda suffered from esotropia and right hypertropia, for which she had been treated in 1954.

Plaintiff filed a reply in which he admitted that Linda had crossed eyes prior to the issuance of the policy and had worn glasses under the direction of a physician for the purpose of correcting that condition, but alleged that he had reported this fact to defendant's agent at the time he applied for the insurance and that the latter told him that this was immaterial and that defendant was interested only in conditions for which surgery had been performed or advised.

Defendant thereupon moved for judgment on the pleadings on the grounds that (1) the complaint does not allege that the sickness was contracted or commenced 16 days after coverage; (2) the complaint and reply admit that Linda was suffering from strabismus or crossed eyes prior to the issuance of the policy and that strabismus is not a sickness within the definition of sickness in the policy.

At the oral argument it was conceded that Linda had been wearing corrective glasses due to strabismus, or crossed eyes, for several months before the policy was issued, but that, since the glasses did not correct her condition, the surgery upon which the present claim is based was performed to correct that condition subsequent to the policy becoming effective.

A motion for judgment on the pleadings is, in effect, a supplementary demurrer to the record: London v. Kingsley, 368 Pa. 109. In disposing of it, the court is required to construe the pleadings alone, drawing all the inferences and assuming all the concessions which would apply in ruling on a demurrer: Goodrich-Amram, 1034 (b) 1, p. 251.

Accordingly, the question before us is whether, considering all of the facts alleged in the pleadings and construing them most favorably for plaintiff, they require that judgment be entered in favor of defendant for the reason that they establish that Linda's operation was not covered by the policy.

At the oral argument, counsel for defendant stated that he was not here relying upon the defense of misrepresentations set forth in the answer but rested his case at the present time solely upon the contention that the complaint does not set forth a good cause of action because it fails to allege that Linda's sickness did not arise prior to 16 days after the effective date of the policy and because plaintiff's reply admits that the sickness predated the issuance of the policy.

It may be noted that, while the complaint in paragraph 4 avers that the sickness of plaintiff's daughter out of which plaintiff's cause of action arises was strabismus, the answer denies that the operation was performed for strabismus and avers that the daughter's disease was estrophia and right hypertropia. However, in his reply, plaintiff admits that his daughter was afflicted with crossed eyes prior to the insurance of the policy.

Crossed eyes is synonymous with, or at least included within the meaning of, the term strabismus. See New College Standard Dictionary (Funk and Wagnalls Co. —1950) in which strabismus is defined:

"STRA-BIS-MUS (struh-biz'-) noun. A condition in which the eyes cannot be simultaneously focused on the same spot: when one eye or both eyes turn inward, the patient is cross-eyed: when outward, wall-eyed. . . ."

Further, plaintiff in his brief states, page 2:

"There is no dispute as to the nature of the operation. Strabismus is a generic term covering all conditions of crossed eyes. Esotropia is the term for a strabismus involving inturning of the eyes, and hypertropia is the condition where one eye focuses on a higher level than the other."

Hence, regardless of defendant's averment in its answer distinguishing between the diseases, it is apparent that prior to the issuance of its policy by defendant, plaintiff's daughter was afflicted with the condition for which the operation was performed.

It is plaintiff's position that his daughter's operation is covered by the policy because when the application was signed the defendant's agent listed thereon the eyes' operation for plaintiff's son, Larry, and thereby excluded strabismus as a sickness covered by the policy so far as Larry was concerned, but when told of Linda's

condition of strabismus which caused her to wear glasses, the agent had stated that this was immaterial and did not list it in the application. He contends that the necessary result of this is that Linda's strabismus was not excluded from the policy.

We have before us, therefore, the narrow question whether a judgment for defendant should be entered upon the pleadings when it appears on their face that plaintiff is claiming to recover upon a health policy which embraces only sicknesses contracted and commencing 16 or more days after the policy becomes effective, whereas the sickness which forms the basis of the claim was admittedly contracted and commenced *prior* to that date.

To state this question is to answer it. In order to recover upon the policy plaintiff must bring himself within its terms. Under a specific condition of this policy, the sickness of the daughter which is the basis of the present action is excluded from its coverage. Therefore, plaintiff cannot recover.

In our opinion, this conclusion is not affected by the conversation between plaintiff and defendant's agent at the time the application for insurance was signed, nor by the fact that the application lists the son's operation for strabismus but omits the fact that the daughter wore glasses because of the same condition prior to the date of application. The purpose of asking applicant about the medical history of the persons to be covered by the insurance is to give defendant company information that will guide it in determining whether to accept the application. For instance, question 37 lists a large number of diseases, such as heart murmur, rheumatic fever, tuberculosis, epilepsy, stomach ulcers, and many other diseases of various organs. If the persons to be covered by the insurance had been treated for these disorders in the past, conceivably the company

would want to refuse to issue a health policy because of the likelihood of their recurrence. Other questions in the same section of the application relate to whether applicant has been previously refused insurance by any company. These are all matters relating to the general insurability of plaintiff and his family. It is not their purpose to define the diseases which are excluded from the proposed insurance so as to make all other disorders not listed covered by the policy. The conversation between the agent and plaintiff would be relevant if the question of misrepresentation were the issue in the case. In the present inquiry, it is immaterial.

We recognize that a judgment on the pleadings, like all summary judgments entered, should not be entered unless the case is clear and free from doubt: Vrabel v. Scholler, 369 Pa. 235; Bogojavlensky v. Logan, 181 Pa. Superior Ct. 312. Also, since the motion is in the nature of a demurrer, the averments in the complaint and reply and every reasonable reference arising therefrom must be accepted as true. Bogojavlensky v. Logan, supra; Cary v. Lower Merion School District, 362 Pa. 310. In the case at bar, however, the controlling facts as disclosed by the pleadings are clear and the issue is free from doubt. Accordingly, judgment should be entered for defendant.

### Order

Now, November 6, 1957, motion of defendant for judgment on the pleadings is granted and it is ordered that judgment in the above entitled case be entered for defendant.

### Exception

Now, November 6, 1957, to the foregoing order of court counsel for plaintiff excepts, and, eo die, a bill of exceptions is sealed for plaintiff.